**1086** [247

Alan D. JOHNSON and Louise M. LOYD v.
The STATE of Arkansas*

5453                                                        449 S. W. 2d 954

Opinion delivered February 2, 1970

[Rehearing denied March 9, 1970]

1.  Criminal law—preliminary proceedings—discretion of trial
    court.—Granting a motion for continuance or for severance in
    felony trials less than capital is within the sound discretion of
    the trial court and will not be reversed on appeal unless there
    has been an abuse of discretion.
2.  Criminal law—appeal & error—motion for continuance, de-
    nial of.—Motion for continuance on ground that insufficient
    time had been allowed for preparation of defense was properly
    denied where there were no allegations that would show a need
    for more time.
3.  Criminal law—appeal & error—severance, refusal of.—No
    abuse of discretion was shown in trial court's refusal of sev-
    erance in a case involving crime of robbery where no cross im-
    plicating confessions were involved.

Appeal from Pope Circuit Court, *Russell C. Rob-
erts,* Judge; affirmed.

*Irwin, Streett & Braden,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston,* Asst.
Atty. Gen., for appellee.

Carleton Harris, Chief Justice. Appellants, Alan
D. Johnson and Louise M. Loyd were charged and con-
victed of the crime of Robbery, it being alleged that
they did by force rob the Pottsville office of the Peoples
Bank and Trust Company of $7,000.00. The jury fixed
the punishment of each at confinement in the state peni-
tentiary for a period of 15 years. From the judgment
so entered, appellants bring this appeal. For reversal,
two points are asserted, first, that the court should have
granted appellants' motion for continuance, and second,
that the court should have granted appellants' motion
for severance of the cases. We proceed to a discussion
of each point.

*P-1076 Ark. Adv. Sheets

The record reflects that the Information charging appellants with the crime was filed on June 26, 1969, and Ike Allen Laws, Jr., was appointed to represent appellants at arraignment. Subsequently, Laws moved that he be relieved from representing appellants for the reason that he was a stockholder in the Peoples Bank and Trust Company of Russellville, and further, that his father was a member of the Board of Directors. On July 12, the court entered its order relieving Laws, and appointed another attorney, Jim Young, to represent the defendants. Thereafter, according to appellants' "statement of the case," Young was relieved from the representation, and the present attorneys, Irwin, Streett and Braden were appointed on July 23.[1] The case had already been set for trial for July 26 at 9:00 A.M. On July 24, Mr. Braden filed a motion for continuance, asserting that defense counsel had not been notified of the appointment until 7:00 P.M. on the night before; that Johnson was presently incarcerated at Cummings Prison, and counsel had had no opportunity to talk with him. The motion was denied. The court directed that Johnson be returned from the penitentiary, and he was returned to Pope County on July 25. On the next morning, attorneys for appellants made the following motion:

"The defendants would move for a continuance due to inadequate time in which to prepare a defense, that Alan D. Johnson's first opportunity to speak to his attorney was approximately 4:00 o'clock Friday afternoon; and at this time we would also move the Court to sever the two actions and give the defendants a separate trial, because their interests are adverse to each other, and the same lawyers do not[2] represent each of them."

[1] The content of this last sentence does not appear in the record.

[2] It appears that the "do not" is a typographical error, as the record does not reflect that appellants were represented by separate counsel. Also, counsel, in arguing the point at Page 10 of appellants' brief, state:

We do not agree with appellants' first contention. Of course, a motion for continuance is addressed to the sound judicial discretion of the trial court, and a reversal of the trial court is only ordered where there is an arbitrary abuse of that discretion. The motion for continuance simply sets out that there has been an insufficient time allowed for preparation of the defense. The motion does not contain the names of any purported witnesses, let alone a statement or statements of what such witnesses would testify to, or where they resided. It will be recalled that appellants were charged with the crime, and arrested on June 26, and the trial did not occur until a month later. During this period of time, attorneys had been appointed to represent appellants, and the record reflects that Mr. Laws had already moved to protect the rights of Johnson.[3] There is no showing that the previously appointed attorneys had been contacted to determine if an investigation had been made, or to ascertain the results of any such investigation. There being no allegation that would show a need for more time, we are unable to say that the court arbitrarily abused its discretion.

In discussing the second point, it is necessary that the evidence be reviewed. Harold Edward Williams testified that he was employed by the Peoples Bank and Trust Company of Russellville, and was working in the Pottsville branch on June 25, arriving at work about 8:30 A.M. He said that shortly after 1:00 P.M. the door opened, and a man, followed by a woman, came

"In the case at bar, appellants in addition to being antagonistic towards each other, and having testimony if offered that would conflict with the others were both represented by the same appointed counsel. The fact that the same counsel represented both appellants prevented any showing of the hostility. The only alternative was for both to decline to take the stand. This presented a situation where the appellants when tried together were effectively deprived of representation by counsel."

[3] Lieutenant Andy McKay testified that Johnson was arraigned, and the court appointed an attorney, "and before he was returned from the courtroom we were instructed not to ask him any more questions by his court appointed attorney."

into the bank, and stopped in front of the teller's window. The man said that they needed to see someone about a loan, and when asked as to the type loan, was told that money was needed to buy a farm. Williams explained that he was only working at Pottsville on a temporary basis, would not be able to make a loan of that type, and it would be necessary that they go to the bank at Russellville, and contact one of the loan officers. The man asked for the names of persons to contact, and when Williams reached for a note pad, both the man and woman produced revolvers, and the man said, "This is it. Do you understand?" The robber pulled the hammer back on the revolver, handed Williams a blue and white striped pillow case, and told the banker to "fill this up." While this was being done, the robber walked into the vault, looking for money. In placing the currency in the bag, Williams inserted $500.00 in marked bills, and having finished, turned to go into the vault. The woman cocked the hammer on her pistol, pointed it at him and said, "Hold it right there where you're at." The man returned from the vault, asked if there was an alarm system therein, and upon Williams' replying in the negative, told the banker to go into the vault. The robber attempted to close the door without closing the fire doors, and Williams, in testifying, said that the door would not lock in such a manner. After waiting a few moments, and hearing a vehicle start up outside, Williams tried the door, could not get it open, but remembered there was an old church type bell above the vault with a rope that came down through the ceiling. A place in the cement ceiling had been chiseled out to take care of the wadded rope and a plain piece of paper had been attached to the ceiling, and painted so that it could not be distinguished from the ceiling itself. Williams pulled the paper loose and rang the bell some six or eight times until the bell turned upside down, and no longer would ring. Within a few minutes, Williams was discovered by a lady who operated the grocery store across from the bank. According to a subsequent audit,

$7,214.25 was taken in the robbery.[4] Appellants were apparently arrested within a short period of time, and were driven to the front of the bank. Williams went outside, saw the two persons in the car, and positively identified them as the robbers.

Billy Baker, Corporal with the Arkansas State Police, testified that, on June 25, he was on duty and received a communication about a pickup truck, and was told to watch out for it. He had also been advised that a bank robbery had occurred. Baker testified that he saw the truck at the west edge of Atkins, driving east on U. S. Highway 64; that he was driving west, but turned around and gave pursuit, finally stopping the truck after it had turned off onto Highway 105. The occupants of the vehicle, the appellants, were placed under arrest, and the officer made a search of the truck, and *inter alia,* found a large amount of money in a blue and white striped pillow case on the front seat. There was $6,694.00 in the sack.

Officer Andy McKay testified that he interviewed the two appellants and advised them of their constitutional rights; that Johnson indicated that he understood his rights and signed a waiver, and upon being asked if he had been involved in the commission of robbing the bank at Pottsville, answered, "You caught us with the goods. There is no sense in messing around, but before I give an answer I wish to talk to an attorney." Subsequently, however, he gave a voluntary statement as to his participation, but the statement was interrupted for arraignment purposes, and after the arraignment, the attorney who had been appointed for appellants directed McKay not to talk with Johnson any further.

Joe W. Phillips, a special agent with the F. B. I., testified that he investigated the bank robbery, interviewed Johnson, advising the latter of his constitution-

---

[4]Testimony at the trial revealed that the marked bills were included.

al rights as set out on a printed form, which Johnson signed. The agent testified that each item was explained to Johnson; that he was asked if he understood these rights, and he answered affirmatively. Appellant then made a statement.[5] In testifying before the jury, McKay stated that Johnson said, "You caught me with the goods," instead of "us."

As to Mrs. Loyd, McKay stated:

"She denied knowledge of the bank robbery, didn't wish to make a statement, made several verbal comments she was nowhere around; and she stated it was true she and this fellow had come up to this area. She had got with a gentleman from Dardanelle, Arkansas; that they had anticipated going fishing; they got to drinking; and I believe her description was 'he got a little too hairy' for her in their consumption of alcohol, and she decided to hitchhike home; and it was just shortly before Trooper Baker had stopped them that Mr. Johnson had picked her up hitchhiking; and she knew nothing of the bank situation."

Neither appellant testified.

The question of whether a severance should or should not be granted in felony trials less than capital

---

[5]The statement was as follows: "I, Alan Douglas Johnson, make the following free and voluntary statement to Joe W. Phillips, who has identified himself as a special agent of the FBI and who has explained to me each of my rights as named in the above form, which I have signed.

"Shortly after 1:00 P.M., on Wednesday, June 25, 1969, I robbed the bank in Pottsville, Arkansas. While I cased that bank on the morning of June 25, 1969, prior to the robbery, I realized it was a branch bank of the Peoples Bank and Trust Company of Russellville, Arkansas. After I robbed the bank, I tried to lock the teller in the bank vault. I locked the vault door partially, but I did not get it locked all the way. I actually planned the robbery Tuesday night 6/24/69 before I robbed the bank on 6/25/69.

"I arrived in Pottsville, Arkansas, on the morning of 6/25/69 and drove by the bank a couple of times and cased it before robbing it that afternoon."

is governed by the same rule that controlled appellants' first point, *i. e.*, the trial court will not be reversed unless there has been an abuse of discretion. *Finley* v. *State,* 233 Ark. 232, 343 S. W. 2d 787. We find no abuse of discretion under the facts of this case. It will be noted that the statement made by Johnson to the jury did not in any manner implicate appellant Loyd. Appellant Loyd's statement to McKay was a denial of any participation in the crime; accordingly, there were no cross-implicating confessions as in *Mosby* and *Williamson* v. *State,* 246 Ark. 963, 440 S. W. 2d 230. This appellant obviously was primarily convicted upon the testimony of the banker, whose evidence definitely connected her as a principal. Mrs. Loyd, had she seen fit, could have maintained her position on the witness stand without fear of contradiction from Johnson, since the court had already excluded any reference to her participation.[6]

We find no prejudice to either appellant, because of the court's refusal to grant a severance.

Affirmed.

---

[6]Of course, had the cases been severed, and either appellant had been willing to testify against the other, there was nothing to prevent the Prosecuting Attorney from using that testimony.