Calvin BROWN and Cecil BETTIS Jr. *v.*
STATE of Arkansas

CR 75-27                                   534 S.W. 2d 213

Opinion delivered March 8, 1976

[Rehearing denied April 5, 1976.]

450

*Pickens, Boyce, McLarty & Watson* and *McArthur, Lofton, & Wilson, P.A.,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., and *Leroy Blankenship,* 3rd Judicial Circuit Prosecuting Attorney, for appellee.

J. FRED JONES, Justice. Calvin Brown and Cecil Bettis, Jr. were jointly tried before a jury and convicted of the crime of burglary. They were sentenced to five years each in the Department of Correction and a 15 year sentence, with five years suspended, was added to Brown's sentence for the use of a firearm in connection with the crime. Both Brown and Bettis have appealed to this court and are represented by separate attorneys who have filed separate briefs.

Brown and Bettis were also jointly tried and convicted at a subsequent trial on charges of robbery arising out of the same transactions or incidents as did the burglary charges. They both appealed from the judgments on the robbery convictions but their appeals in the robbery case are treated in a separate opinion.

The facts, as gathered from the evidence in the record, appear as follows: On a Sunday evening Mr. and Mrs. Harper returned to their home in Newport from playing bridge with friends. They unlocked the back door of their home and when they entered their living room, they were confronted by two men with stocking masks over their heads and faces. One of the intruders carried a pistol with which he forced the Harpers to lie on the floor while their hands and feet were tied with nylon cord or rope, and tape was wrapped around their heads and drawn over their eyes and mouths. Some valuable rings were taken from Mrs. Harper's fingers; Mr. Harper's wallet containing cards and money was taken from his pocket and he was rendered temporarily unconscious by blows on the head and shoulder with a pistol or some other instrument. The Harpers were then dragged across the floor out of the living room. Mrs. Harper heard one of the intruders in her dining room calling out what appeared to be signals on a walkie-talkie "K-1 to K-2" or something like that. The intruders then left.

Mrs. Harper soon freed herself from her bonds and called the police. The police officers arrived in a matter of minutes and an ambulance was called to the scene and took the Harpers to the hospital. The glass in a side window of the Harper residence had been broken over the latch and pry marks, as if made by a screwdriver, appeared on the outside windowsill.

Mr. Eugene Tidwell, who lived about one and one-half blocks down the street from the Harper residence, had been sitting on his front steps and had observed Brown and Bettis pass his house in Bettis's automobile with Bettis driving. He observed the Bettis automobile stop for a few minutes on three different occasions within a short period of time between his house and the Harper residence, the last stop being closer to the Harper home than to his own. Soon after he last saw the Bettis automobile stop, and then move on, he heard the sirens from the ambulance and police vehicles and observed the commotion as the vehicles converged at the Harper residence. He walked up to the Harper residence and upon inquiry by the investigating officers, he advised them of what he had seen in relation to Brown and Bettis, and described the Bettis automobile to the officers.

Through radio communication between the police officers, a roadblock was immediately set up between Newport and Batesville. Bettis's name and his automobile description were radioed to officers manning the roadblock and within a short period of time Brown and Bettis appeared and stopped at the roadblock in Bettis's white over yellow Chrysler automobile with Bettis driving.

The officers searched Brown and Bettis at the roadblock and brass knuckles were removed from Brown's hip pocket. As Brown got out of Bettis's automobile, the officers observed and removed from the floorboard of the automobile, on the passenger side where Brown had been sitting, a loaded .45 caliber semi-automatic pistol.

Brown and Bettis were placed under arrest and taken in a police patrol car to the police station in Newport. Bettis's automobile was also driven to the police station where it was searched that same evening. A walkie-talkie radio transmitter-receiver was found under the front seat on the passenger side of the automobile. A loaded .25 caliber semi-automatic pistol was found under the armrest between the driver and passenger side of the front seat. A briefcase containing a .45 caliber size pistol holster, a flashlight, and some .38 and .45 ammunition were found in the trunk. Three screwdrivers were found in the back seat and one of the diamond rings taken from Mrs. Harper's fingers was found between the backrest and seat cushion in the rear seat of the automobile. The officers returned to the scene of the roadblock and in searching the ditches and shoulders of the highway in the direction from which the Bettis automobile had approached, they found a brown paperbag containing Mr. Harper's wallet. The wallet was found in the ditch on what would have been Bettis's righthand side of the highway, about 75 or 80 yards from where the roadblock had been maintained, and within plain view of the roadblock. The wallet contained Harper's driver's license, his ID and credit cards but no money.

As already stated, the appellants are represented by separate counsel and have filed separate briefs on this appeal. In some instances they have designated the same points on

which they rely for reversal and in other instances they have designated separate points not common to both, so we shall discuss the designated points accordingly.

The appellant Brown contends that his arrest was illegal. Both Brown and Bettis contend that the search of the Bettis automobile was illegal, and that the trial court erred in overruling their motions to suppress evidence obtained in the search. We find no merit in these contentions.

Brown argues that his arrest at the roadblock was illegal because it was without probable cause. State policeman Noel Baldridge, who made the arrest, had received information by police radio that a robbery had just occurred in Newport; that Bettis was a prime suspect and that his automobile should be stopped. State Police Lieutenant Wilson broadcast the information to Baldridge and, aside from information that Bettis and Brown had just left the scene of the crime, Wilson had independent information of other similar crimes in which Bettis and Brown had been involved or suspected.

The arresting officer is entitled to credit for the collective knowledge of the entire police team in such cases. *Johnson v. State,* 249 Ark. 208, 458 S.W. 2d 409. In *United States v. Stratton,* 453 F. 2d 36 (8th Cir. 1972), *cert. denied* 405 U.S. 1069, the court said:

> "We think the knowledge of one officer is the knowledge of all and that in the operation of an investigative or police agency the collective knowledge and the available facts are the criteria to be used in assessing probable cause."

Furthermore, all automobiles were being stopped at the roadblock and a loaded .45 caliber pistol was found on the floorboard where Brown was sitting and brass knuckles were found in his hip pocket.

Both appellants argue that the affidavit upon which the search warrant was issued was insufficient because it contained hearsay, which was constitutionally impermissible under *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,* 393 U.S. 410 (1969), since the reliability of the hearsay

source was not established and the statements were insufficient to show probable cause anyway. The *Aguilar* and *Spinelli* decisions require that the affidavit for a search warrant contain sufficient information to enable the issuing magistrate to determine that the hearsay informant is reliable, and that sufficient underlying circumstances be related to establish probable cause for the warrant. Overstrict interpretation of the rule laid down in *Aguilar* and *Spinelli* has been tempered and clarified by a number of decisions since *Aguilar* and *Spinelli*. In *United States* v. *Bell*, 457 F. 2d 1231 (5th Cir. 1972), the court said:

> ". . . [A] specter has arisen in this case that deserves to be laid to rest. It is now a well-settled and familiar concept, as enunciated by *Aguilar* and *Spinelli*, that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. * * * We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. . . Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A 'neutral and detached magistrate' could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon first-hand knowledge. Thus we conclude that *Aguilar* and *Spinelli* are limited to the informant situation only."

See also *United States* v. *Burke*, 517 F. 2d 377 (2nd Cir. 1975); *United States* v. *Unger*, 469 F. 2d 1283 (7th Cir. 1972), *cert. denied* 411 U.S. 920 (1973); *United States* v. *Mahler*, 442 F. 2d 1172 (9th Cir. 1971), *cert. denied* 404 U.S. 993 (1971); *United States* v. *McCoy*, 478 F. 2d 176 (10th Cir. 1973), *cert. denied* 414 U.S. 828 (1973); *United States* v. *Rajewich*, 470 F. 2d 666 (8th Cir. 1972); *People* v. *Glaubman*, 175 Colo. 41, 485 P. 2d 711 (1971); *Galloway* v. *United States*, 326 A. 2d 803 (D.C. App. 1974); *Wolf* v. *State*, 281 So. 2d 445 (Miss. 1973); *State* v. *Paszek*, 50 Wis. 2d 619, 184 N.W. 2d 836 (1971); *Erickson* v.

*State,* 507 P. 2d 508 (Alaska 1973); *Mobley* v. *State,* 270 Md. 76, 310 A. 2d 803 (1973).

The affidavit for search warrant contained information appearing in the record as follows:

> "At 6:15 the Police Dept. received a call from Harpers Home at 806 Third, that there had been a robbery, Officers arrived and found Mr. & Mrs. Harper tied up. They advised there were two subjects who were waiting for them when they arrived, they were armed. Cecil Bettis, Jr. was seen parked beside the Harpers home just prior to the robbery, with another subject with him. A.P.B. was placed on Bettis and the subject was arrested at Salado, and had in his possession a .45 Auto. Subject Calvin Brown who had been arrested in the past for Arson, was with him. (over)
> and a pair of Brass Knuckles, Subject Calvin Brown was also implicated in a Burglary involving Robert Holden's House. The subjects had just enough time to get to Salado, from the time the Harpers were robbed."

We are of the opinion that the affidavit met our own requirements as stated in *Walton & Fuller* v. *State,* 245 Ark. 84, 431 S.W. 2d 462 (1968). In *French* v. *State,* 256 Ark. 298, 506 S.W. 2d 820 (1974), we said: "We do not deem it necessary for an affiant applying for a search warrant to state reasons why a public official is a credible or reliable informant." Under the evidence in the case at bar a search warrant would not have been necessary under our decisions in *Easley* v. *State,* 255 Ark. 25, 498 S.W. 2d 664 (1973). *Cox* v. *State,* 254 Ark. 1, 491 S.W. 2d 802 (1973); *Wickliffe & Scott* v. *State,* 258 Ark. 544, 527 S.W. 2d 640 (1975).

We are of the opinion that the affidavit contained sufficient information to justify the magistrate in issuing the search warrant and that the search warrant was valid. Furthermore, the automobile belonged to Bettis and according to the testimony of Lieutenants Wilson and Pankey, Bettis authorized the search before the warrant was issued and further advised that no search warrant was necessary after the warrant was issued. The voluntariness of consent to search is a question of fact to be determined from all the cir-

cumstances. *Schneckloth* v. *Bustamonte,* 412 U.S. 218 (1973); *United States* v. *Gavic,* 520 F. 2d 1346 (8th Cir. 1975). We are of the opinion and so hold that the trial court did not err in overruling the appellants' motions to suppress the evidence obtained in the search of the automobile.

Brown contends that the trial court erred in denying his motion for a preliminary hearing prior to trial. We find no merit in this contention. In *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S. Ct. 854 (1975), the Supreme Court said:

> ". . . [W]e adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. * * * Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. * * * Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."

We have several times held that the provision of Ark. Stat. Ann. § 43-601 (Repl. 1964), relied on by the appellant, is directory and not mandatory. There can be no reversible error solely because of a failure to take one lawfully arrested before a magistrate for preliminary examination. *Jones* v. *State,* 246 Ark. 1057, 441 S.W. 2d 458 (1969), and other cases therein cited.

Brown contends that the trial court erred in denying his motion for severance. The granting or denial of a motion for severance in noncapital cases lies within the sound discretion of the trial judge. *Lewis* v. *State,* 220 Ark. 914, 251 S.W. 2d 490 (1952); *Johnson & Loyd* v. *State,* 247 Ark. 1086, 449 S.W. 2d 954 (1970). See also *Ballew* v. *State,* 246 Ark. 1191, 441 S.W. 2d 453 (1969), and *Cox* v. *State,* 257 Ark. 35, 513 S.W. 2d 798 (1974).

Bettis contends that the trial court erred in allowing his former wife to testify as a witness for the state in violation of Ark. Stat. Ann. § 43-2019 (Repl. 1964). This contention is without merit for the reason there was no objection made

when his former wife was called to testify and this witness was not the appellant Bettis's wife at the time of the occurrence or at the time she testified.

Bettis also contends that inflammatory and prejudicial remarks made by the prosecuting attorney prejudiced his case. This contention relates to cross-examination of appellant Bettis, who testified in his own defense. He was asked on cross-examination if he then had a gun on his person and whether or not he had made certain threats of bodily harm if he was not acquitted. He denied having a gun or making such threats. Upon the examination of Mr. Bullard, a witness called by the appellant Bettis, the prosecuting attorney suggested to the court that Mr. Bullard be advised of his constitutional rights against self-incrimination prior to his testimony. Bettis's attorney objected to the comment and the objection was sustained. On cross-examination then the prosecuting attorney apologized for his remark if it was considered unfair and stated: "There has been some testimony here that made me think that the questions asked of you might have been different." At this point the appellant's attorney moved for a mistrial and the motion was denied. The appellant's attorney then requested the court to instruct the jury to disregard the statement and the court did so admonish the jury. An attorney has considerable latitude in cross-examining a witness in a criminal case as rather thoroughly set out in *Butler* v. *State*, 255 Ark. 1028, 504 S.W. 2d 747 (1974). We are of the opinion that the trial court did not err in overruling Bettis's motion for a mistrial.

Appellant Brown has designated additional points on which he relies for reversal as follows:

4

"The trial court erred in refusing appellant's motion for continuance and severance due to co-defendant's counsel introducing evidence prejudicial and inadmissable as to appellant.

5

The trial court erred in requiring appellant to proceed with the defense prior to co-defendant presenting his testimony.

6

The trial court erred in requiring appellant to take the stand when called as a witness by the co-defendant.

7

The trial court erred in quashing a subpoena duces tecum for the tax records of the prosecuting witness.

8

The trial court erred in refusing appellant's motion for mistrial based upon prosecuting attorney's repeated references to other charges pending against appellant.

9

The trial court erred in not requiring the prosecuting attorney to produce witnesses as previously ordered that would have provided testimony beneficial to appellant.

10

The trial court erred in placing unreasonable and prejudicial limitations on appellant's cross examination of the co-defendant.

11

The trial court erred in denying appellant's motion for a directed verdict of acquittal.

12

The trial court erred in instructing the jury on the firearm enhancement statute, and further erred in attempting to clarify said instruction orally for the jury."

The appellant Brown recognizes the close relation between his third, fourth, fifth and sixth points and has argued them together. We agree that the trial court erred in requiring Brown to take the witness stand when called as a witness by his co-defendant Bettis. We, therefore, see no reason to discuss appellant's fourth and fifth points as they are not likely to arise again on retrial.

Ark. Stat. Ann. § 43-2016 (Repl. 1964) provides as follows:

"On the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses and misdemeanors in the State of Arkansas, the person so charged shall, at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him."

This court has not had occasion to pass on the question of whether a defendant may call his co-defendant as a witness and force him to either testify or assert his privilege against self-incrimination before the jury that is trying both together. We find few decisions from other jurisdictions on this particular point, but in *People* v. *Owens*, 291 N.Y.S. 2d 313, the court said:

"[T]he privilege against self-incrimination is violated whenever a criminal defendant is compelled to take the stand and claim his privilege, whether at the behest of the prosecution or a codefendant."

Brown contends as his seventh point that the trial court erred in quashing a subpoena duces tecum for the tax records of the prosecuting witness Mr. Harper. Prior to trial appellant Brown filed a motion for subpoena duces tecum for the tax records of the prosecuting witness Harper and the motion was granted. Harper filed a motion to quash the subpoena duces tecum and after hearing on the motion it was granted and the subpoena duces tecum was quashed. The appellant Bettis had indicated in his testimony that he and Harper had been long-time friends and had participated in "fixing" horse races; that Harper while county judge had overpaid him for work he did for the county, and that Harper had discussed with him fictitious burglaries and robberies in order to collect money from insurance companies. These activities were emphatically denied by both Mr. and Mrs. Harper on cross-examination, and in support of his seventh point Brown argues as follows:

". . . Harper's activities and misappropriating funds from the County, fixing horse races and fraudulent insurance schemes makes it clear that such tax records

would have been relevant and would have gone to the credibility of prosecuting witness. It is maintained by Appellant that the quashing of said subpoena does not meet the statutory requirements and to do so deprived Appellant of evidence that could have been used at his trial. For the foregoing reasons, Appellant respectfully moves this Court to reverse his conviction hereunder."

The trial court ruled the tax records collateral and inadmissible for the purpose they were sought and we think the trial court was right.

In *Spence* v. *State,* 184 Ark. 139, 40 S.W. 2d 986 (1931), we said:

"It is well settled, however, in this State that a party who cross-examines a witness on collateral matters for the purpose of testing his credibility as a witness is bound by his answers and cannot contradict his testimony on a collateral issue. The reason for the rule is to avoid a multiplicity of issues which would tend to confuse and divert the minds of the jury from the main issue."

In *Fulwider* v. *Woods,* 249 Ark. 776, 461 S.W. 2d 581 (1971), we said:

"A witness cross-examined as to matter collateral to the issues cannot be impeached by the cross-examining party by evidence contradicting his testimony. *Taylor* v. *McClintock,* 87 Ark. 243, 112 S.W. 405. The test of whether a fact is collateral is whether the cross-examining party would be entitled to prove it as a part of his evidence in chief. *Randall* v. *State,* 239 Ark. 312, 389 S.W. 2d 229."

We deem it unncessary to discuss the appellant Brown's eighth, ninth, tenth and eleventh assignments as they are not likely to arise again on retrial.

As to appellant Brown's twelfth point, we agree that the trial court erred in determining the penalty for employing a firearm in connection with the crime under Ark. Stat. Ann. §

43-2336 (Supp. 1975) rather than permitting the jury to fix the additional penalty under proper instructions.

Ark. Stat. Ann. § 43-2336 (Supp. 1975) reads as follows:

"On and after July 1, 1969, any person convicted of any offense which is now, or may hereafter be, classified by the laws of this State as a felony, and the person so convicted employed any firearm of any character as a means of committing or escaping from said felony, may, in the discretion of the sentencing court, be subjected to an additional period of confinement in the State penitentiary for a period not to exceed fifteen (15) years."

We held this statute constitutional in *Redding v. State,* 254 Ark. 317, 493 S.W. 2d 116, and also in *Redding* we said:

"We are of the view that the legislature's use of the words 'sentencing court' was intended by the legislature to refer either to the judge or the jury and that the factual issue as to the use of a firearm is to be determined by the trial court if a jury is waived and otherwise by the jury as in the case at bar."

Since our opinion in *Redding v. State, supra,* we have noted the difficulty encounterd where a jury fixes the primary penalty upon conviction and finds that a firearm was employed and the trial judge rather than the jury fixes the enhanced penalty under the statute. See *Johnson v. State,* 249 Ark. 208, 458 S.W. 2d 409. We have concluded, therefore, that in assessing the penalty under § 43-2336, *supra,* the fact finder, whether it be a jury or a trial judge sitting as a jury, should not only determine whether a firearm was employed under the provisions of § 43-2336, *supra,* but should also assess the enhanced penalty when the employment of a firearm is so found. *Cotton v. State,* 256 Ark. 527, 508 S.W. 2d 738.

The judgment is affirmed as to Bettis and reversed and remanded for a new trial as to Brown.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I cannot agree that the affidavit for the search warrant contained sufficient showing of probable cause. The statement that "Cecil Bettis,, Jr. was seen parked beside the Harper's home just prior to the robbery, with another subject with him" was obviously necessary to a finding of probable cause. It is just as obviously hearsay. The deficiency is not in failure to support the credibility and reliability of an identified informant and his information or of a victim. The informant is totally unidentified. I take this to be a fatal defect.

I would still agree that there was no error in the trial court's refusal to suppress the evidence seized as a result of the search. There was evidence sufficient to sustain the circuit judge's holding that the search was valid as a "consent" search. There was no evidence of coercion or promises to obtain the consent of Bettis to the search. He had been given Miranda warnings. The only factors militating against the validity of the consent were the fact that Bettis was in custody in the city hall and the absence of any affirmative evidence that Bettis knew that he could withhold consent. There would simply be no basis for our overturning the finding of fact made by the circuit judge in this respect. See *United States v. Watson,* — U.S. —, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).

Although the trial judge did not sustain the search as a valid automobile search, the undisputed evidence shows that it was, in my opinion. There was probable cause for the arrest of Bettis and Brown. The automobile driven by Bettis was stopped at a roadblock on Highway 4, late in the afternoon. The traffic was fairly heavy, as the arresting officer estimated that he stopped about 100 cars in a 30 minute period before the arrest and another 100 between that time and the time when other officers arrived. The officer manning the roadblock was alone when the arrest was made. He took a weapon out of the car and another from one of its occupants. All this officer could do was to see that the vehicle was not molested by anyone and that Bettis and Brown did not escape. One of the officers who came in response to the arresting officer's report drove the vehicle back to Newport. Darkness was then approaching. One of the searching officers

explained that a search there was not feasible under the existing conditions and that it would have been dangerous to have left the automobile on the highway.

One of the victims of the crime had been struck with a weapon that could have been brass knuckles. The pistol found in the automobile fit the description of a weapon given by one of the victims as having been used by the burglars. At the time of the automobile search, there is no doubt that the searching officer had, as he testified, knowledge of sufficient facts to cause him to believe that it contained stolen articles, weapons or other evidentiary material.

In this respect, I suppose that I am only agreeing with the majority's unarticulated position, when it said that a search warrant would not have been necessary. I do want to make it clear, however, that I do not consider the search at the police station to have been a valid search incident to an arrest or as a "plain view" search. My position on this point is similar to that I took in concurring in *Byars* v. *State*, 259 Ark. 158, 533 S.W. 2d 175 (1976).