### Richmond

## KEITH ANGELO SAUNDERS V. COMMONWEALTH OF VIRGINIA

September 1, 1977.

Record No. 760819.

Present: All the Justices.

*Robert P. Geary (Harvey Latney, Jr; McGrath and Geary,* on brief), for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the Court.

Keith Angelo Saunders (Saunders or defendant) was convicted by a jury of the first degree murder of Alexander S. Mottley (Mottley or victim). The jury fixed Saunders' punishment at imprisonment for life. We granted a writ of error on limited grounds to the trial court's order sentencing the defendant on the verdict.

Under the writ we will consider only two issues raised by the defendant, namely, (1) whether the trial court erred in sustaining the validity of search warrants authorizing a search of the defendant's automobile and residence, and (2) whether the trial court erred when it denied the defendant's motion for a mistrial after the Commonwealth's Attorney, on cross-examination of the defendant, improperly revealed to the jury that one of the veniremen, on *voir dire* examination, stated that he had seen the defendant working on the victim's delivery truck.

On January 28, 1975, two search warrants were issued by the General District Court of Buckingham County on affidavits sworn to by Garnett A. Shumaker, Jr., Sheriff of Buckingham

County. One of the search warrants authorized search of a 1971 Ford Maverick sedan and the other a search of the defendant's residence in Buckingham County. Prior to his trial in the court below, the defendant filed motions to suppress the evidence seized under the search warrants on the ground that neither of the affidavits stated sufficient probable cause to authorize the issuance of the warrant. The trial court, after a hearing on the defendant's motions, held the affidavits sufficient to authorize the search warrants and denied the motions to suppress.

Both affidavits recited that the crime under investigation was the abduction, robbery and murder of Mottley. The first affidavit, as probable cause to obtain a search warrant for the automobile, stated:

"(1) That the said vehicle matches the description of the vehicle seen in the driveway of the residence of the said Alec Mottley at the time of his alleged abduction.

"(2) That the said vehicle was observed by State Trooper G. R. Cyrus stuck in a ditch on Virginia Secondary Highway No. 608 within fifty feet of the location of the spot at which were found blood, drag marks, spent 22-cal. cartridges and personal effects of the said Alec Mottley, including Alec Mottley's daily sales tickets of January 27, 1975, the date of the alleged abduction, robbery and murder, within approximately one hour of the alleged abduction.

"(3) That there were stains appearing to be blood on the seats, windows, the exterior sides of said vehicle; that there are pine needles and mud similar to that of the terrain of the location hereinabove described; and that there are handprints and fingerprints on the interior of the windows of said vehicle, all of the above described items being visible to the eye upon plain view from the exterior of said vehicle in said parking lot."

The facts constituting probable cause for search of Saunders' residence recited in the second affidavit were:

"(1) That said dwelling and outbuilding are the residence of one Keith Angelo Saunders as admitted by said Keith Angelo Saunders on January 28, 1975, to the affiant.

"(2) That said Keith Angelo Saunders was seen by Trooper G. R. Cyrus at a location within fifty feet of the spot at which were found blood, drag marks, spent 22 cal. cartridges and the personal and business effects of said Alec Mottley including Alec Mottley's daily sales tickets of January 27, 1975; said Alec Mottley having been abducted, robbed and murdered on January 27, 1975, at approximately 7:30-8:30 p.m.; said Keith Angelo Saunders having been seen by the said Trooper G. R. Cyrus at the hereinabove described location at approximately 8:15 p.m. on January 27, 1975, within one hour of the alleged abduction.

"(3) That said Keith Angelo Saunders having told the affiant that he was in the vicinity of Alec Mottley's dwelling at the approximate time of the alleged abduction; that he was driving a certain 1971 cream colored, 4-door Ford Maverick sedan, Virginia license no. CMF-591, in the vicinity of the hereinabove described location and that said vehicle did become stuck in a ditch at the above described location; that said vehicle has been impounded as evidence in this investigation because it appears to contain blood and other evidence."

The defendant first argues that both affidavits are insufficient because the facts recited in them are largely hearsay. Recognizing that hearsay in an affidavit may properly be considered by a magistrate so long as the affidavit also shows a substantial basis for crediting it, *Jones* v. *United States*, 362 U.S. 257, 269 (1960), the defendant argues that *Aguilar* v. *Texas*, 378 U.S. 108 (1964) requires, before the hearsay may be considered in finding probable cause, that the affidavit also show underlying circumstances from which a neutral and detached magistrate can determine either the credibility of the person supplying the information or the reliability of the information itself.

The defendant then proceeds to dissect each paragraph of the affidavits in an effort to demonstrate that it contains hearsay unsupported by a showing of reliability or credibility. For example, the defendant says that the facts contained in paragraph (1) of the first affidavit are clearly hearsay and conclusory, and, since the affidavit fails to set forth the

underlying circumstances buttressing reliability, this information should not have been considered by the magistrate in determining probable cause. As another example, the defendant points to paragraph (2) of the first affidavit and argues that the conclusion that the defendant was seen by Trooper Cyrus within one hour of the alleged abduction near the point where blood, drag marks, spent cartridges and some of the personal effects of the murder victim were subsequently discovered should not have been considered by the magistrate because no facts are contained in the affidavit supporting the conclusion that this incident did, in fact, occur within one hour of the alleged abduction. Saunders says that a further fatal defect in paragraph (2) of the affidavit is that it is hearsay and the affidavit does not indicate how the affiant, Sheriff Shumaker, received information about the blood, drag marks, etc., so there is nothing in the affidavit to show either the credibility of the informant or the reliability of the information.

█ While *Aguilar* and *Spinelli* v. *United States*, 393 U.S. 410 (1969), stand for the proposition that a search warrant based on information received from an underworld figure or professional informer must also provide the magistrate with underlying facts or circumstances buttressing the credibility of the informer and reliability of the information, this rule does not apply to information which comes from the victim of or eyewitness to a crime. *United States* v. *Miley*, 513 F.2d 1191, 1204 (2d Cir.) *cert. denied*, 423 U.S. 842 (1975); *United States* v. *Burke*, 517 F.2d 377, 380 (2d Cir. 1975); *United States* v. *Bell*, 457 F.2d 1231, 1238-39 (5th Cir. 1972); *United States* v. *Unger*, 469 F.2d 1283, 1287 n.4 (7th Cir. 1972) *cert. denied*, 411 U.S. 920 (1973); *McCreary* v. *Sigler*, 406 F.2d 1264, 1269 (8th Cir.) *cert. denied*, 395 U.S. 984 (1969); *Cundiff* v. *United States*, 501 F.2d 188, 189-90 (8th Cir. 1974); *United States* v. *Mahler*, 442 F.2d 1172, 1174-75 (9th Cir.) *cert. denied*, 404 U.S. 993 (1971); *United States* v. *McCoy*, 478 F.2d 176, 179 (10th Cir.) *cert. denied*, 414 U.S. 828 (1973); *Brown* v. *State*, 534 S.W.2d 213, 216 (Ark. 1976); *United States* v. *Walker*, 294 A.2d 376, 377-78 (D.C. Ct. App. 1972); *People* v. *Glaubman*, 485 P.2d 711, 717 (Colo. 1971); *State* v. *Paszek*, 50 Wis. 2d 619, 629-31, 184 N.W.2d 836, 842-43 (1971).

While not overruling the *Aguilar-Spinelli* rule, these decisions have dispensed with the necessity of specific allegations of credibility or past reliable contact with the witness on grounds

that credibility may be inferred from their status as an eyewitness or victim. The rationale underpinning these holdings is that the concomitant danger of self-interest does not inure to a victim or eyewitness to a crime as easily as it would to a professional informant. This rationale is well stated in *United States* v. *Bell, supra,* where the Court said:

".... [A] specter has arisen in this case that deserves to be laid to rest. It is now a well-settled and familiar concept, as enunciated by *Aguilar* and *Spinelli,* that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information.... We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met.... Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A 'neutral and detached magistrate' could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon first hand knowledge. Thus we conclude that *Aguilar* and *Spinelli* requirements are limited to the informant situation only." 457 F.2d at 1238.

In *Guzewicz* v. *Commonwealth,* 212 Va. 730, 187 S.E.2d 144 (1972), and *Brown and Larson* v. *Commonwealth,* 212 Va. 672, 674, 187 S.E.2d 160, 161 (1972), we recognized that a different standard of review applied to a search warrant affidavit which showed that the information related came from an unnamed first time citizen-witness. In *Simmons* v. *Commonwealth,* 217 Va. 552, 231 S.E.2d 218 (1977), we held that facts related by an unknown citizen-witness to a police officer, coupled with what that officer later saw and observed, gave the officer reasonable cause to "stop and frisk" the defendant, so we upheld the defendant's subsequent arrest when the search revealed stolen property. *See Patty* v. *Commonwealth,* 218 Va. 150, 154, 235 S.E.2d 437, 439 (1977).

We hold here, that where a search warrant affidavit discloses that the information related came from the victim of a crime, or

from an eyewitness to the fact related, and the information appears reasonable, the magistrate may infer that it is reliable because based on first hand knowledge.

While the other rules governing the review of affidavits in support of search warrants have been stated many times, a review of these rules at this time will be helpful in resolving the question before us. In *Huff* v. *Commonwealth*, 213 Va. 710, 717, 194 S.E.2d 690, 696 (1973), we noted that the Supreme Court had established standards to be applied by magistrates and reviewing courts in interpreting an affidavit for a search warrant when it said:

"... [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965).

■ Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed. *Draper* v. *United States*, 358 U.S. 307, 313 (1959); *Schaum* v. *Commonwealth*, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975). Probability, and not a prima facie showing, of criminal activity is the standard for determining probable cause, *Beck* v. *Ohio*, 379 U.S. 89, 96 (1964); *Manley* v. *Commonwealth*, 211 Va. 146, 151, 176 S.E.2d 309, 313 (1970) *cert. denied*, 403 U.S. 936 (1971), and the standard of proof is accordingly correlative to

what must be proved. *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949).

The Supreme Court pointed out the great difference between a showing of probable cause· and a showing of guilt in *Brinegar* where it said:

"There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine · them, and therefore a like difference in the *quanta* and modes of proof required to establish them." 338 U.S. at 173.

■ Applying a commonsense and realistic interpretation to the affidavits which are at issue here, a neutral and detached magistrate could readily conclude that the facts set forth in the affidavits of Sheriff Shumaker, who was responsible for and conducting an investigation of the abduction, robbery and murder of Mottley whose body had been discovered earlier that day, were either the result of information received from an eyewitness or facts discovered by the sheriff or other investigating officers. Since the *Aguilar-Spinelli* test does not apply to information obtained from eyewitnesses, and since facts and information related by other officers to the officer-affiant are considered reliable and credible, *United States* v. *Ventresca, supra,* 380 U.S. at 111; *United States* v. *Welebir,* 498 F.2d 346 (4th Cir. 1974), we hold that each of the affidavits contained a sufficient showing of probable cause, the probability of criminal activity, to authorize the issuance of a search warrant and the trial court did not err in refusing to suppress evidence discovered in searches conducted under the warrants.[1]

As we stated earlier, the second question we must resolve is whether the trial court erred when it denied the defendant's motion for a mistrial after the Commonwealth's Attorney, on cross-examination of the defendant, improperly disclosed to the jury that a venireman, Earl H. Griffin, Jr., stated on *voir dire* examination that he had seen the defendant working for the victim on his delivery truck.

[1] Although a warrant was obtained to search the defendant's automobile, a warrantless search of the car would have been permissible under the facts known to the police. *Cook* v. *Commonwealth,* 216 Va. 71, 216 S.E.2d 48 (1975); *Smith* v. *Slayton,* 484 F.2d 1188 (4th Cir. 1973) *cert. denied,* 415 U.S. 924 (1974).

One of the Commonwealth's witnesses, Janice Mae Newton, testified that the victim had regularly delivered bread to her store for at least 22 years. She testified on direct examination and again on cross-examination that Saunders worked for Mottley "sometimes on week-ends" and during the entire summer of 1974. On direct examination, Saunders denied ever working for the victim. On cross-examination, the defendant reiterated he had "never been on that truck". In so doing, he disputed Mrs. Newton's earlier testimony. The Commonwealth's Attorney then asked: "Didn't you hear one of the jurors say he had seen you on there?" Prompt objection was interposed by defense counsel, who moved for a mistrial.

The trial court sustained the objection and instructed the jury to disregard the question. After a general poll of the jurors, who indicated that they could disregard the question, the trial court overruled the mistrial motion. Subsequently, at the conclusion of the defendant's testimony, the court admonished the jurors that, in arriving at their verdict, they should consider only the evidence adduced at trial and the court's instructions. The court then polled the jurors individually and was told by them that each could and would comply with the court's direction.

The statement referred to in the question was made by venireman Griffin on *voir dire* when he was examined as one of a group of five veniremen. When asked by defense counsel if he had discussed the case with anyone or formed an opinion about it, Griffin replied:

"No, sir, not anything. I don't think you can form an opinion until after you hear the evidence on the case, so I haven't no way shape or form. I don't know anything, I mean, no more than when it first happened. I mean everybody heard about it and that's all. I just saw Mr. Mottley on the bread truck and I also saw that boy on the bread truck with him. I think I've seen him with Mr. Mottley if I'm not mistaken. So neither way, I mean, I haven't —"

Subsequent questions by defense counsel and the court elicited a response from Griffin that in the jury's deliberations he would consider only the evidence produced at trial. The veniremen in the group, including Griffin, were accepted as qualified, without challenge for cause, by either the defendant or the

Commonwealth. One of the veniremen in the group, E. D. Palmer, served on the jury at trial.

While conceding that the Commonwealth's Attorney erred in improperly injecting matters not in evidence into the trial, the Attorney General argues that the court's prompt action effectively cured this error.

■ The rule in Virginia is well established that a judgment will not be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* court. *Washington and Old Dominion Ry.* v. *Ward's Admr.*, 119 Va. 334, 339, 89 S.E. 140, 142 (1916). Conversely, as an exception to the rule, if the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial. *Coffey* v. *Commonwealth*, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949).

But whether the conduct was prejudicial is basically a question of fact to be determined in light of all the circumstances in each particular case. *Lewis* v. *Commonwealth*, 211 Va. 80, 83, 175 S.E.2d 236, 238 (1970); Annot. 48 A.L.R.2d 1016, 1018 (1956).

Here, in overruling the defendant's motion for a mistrial, the trial court properly applied the general rule rather than the exception. Under the facts disclosed by the record we find no manifest probability of prejudice to the defendant nor do we find the evidence so impressive as to come within the exception to the rule set forth above. *Lewis* v. *Commonwealth, supra; Asbury* v. *Commonwealth*, 211 Va. 101, 175 S.E.2d 239 (1970).

*Affirmed.*