COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Clements
Argued at Richmond, Virginia


JAMES A. SHELTON

                                    MEMORANDUM OPINION* BY
v.    Record No. 0153-02-2          JUDGE LARRY G. ELDER
                                       DECEMBER 31, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Walter W. Stout, III, Judge

              J. Kevin Clarke for appellant.

              Michael T. Judge, Assistant Attorney General
              (Jerry W. Kilgore, Attorney General, on
              brief), for appellee.


     James A. Shelton, (appellant) appeals from his bench trial

conviction for possession of a Schedule I controlled substance

with intent to distribute pursuant to Code § 18.2-248.  On

appeal, he contends the trial court erroneously denied his

motion to suppress because the evidence established he was

unlawfully seized and searched.  We hold the initial seizure and

frisk of appellant were reasonable in the course of the

officers' arrest of appellant's probable companion on an

outstanding warrant.  Nevertheless, we conclude the facts failed

to support (1) the trial court's ruling that the drugs would

inevitably have been discovered in the course of appellant's

_____
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

arrest on an outstanding warrant or (2) the Commonwealth's alternate theory at trial that the officer developed probable cause to search appellant for weapons or drugs. Thus, we reverse appellant's conviction and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case, Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

## A.

### THE SEIZURE AND WEAPONS FRISK

A law enforcement officer in possession of a warrant for the arrest of a specific individual may seize a person whom he has reasonable suspicion to believe is the person named in the

warrant.  See, e.g., Washington v. Commonwealth, 29 Va. App. 5, 10-11, 509 S.E.2d 512, 514-15 (1999) (en banc).  The officer may detain the individual briefly in order to identify him.  Id.  In addition, under appropriate circumstances, an officer in the process of arresting one individual may briefly detain another in close proximity, "both for [the other person's] safety and the safety of the officers and other bystanders."  Welshman v. Commonwealth, 28 Va. App. 20, 32, 502 S.E.2d 122, 127-28 (1998) (en banc).  Finally, when an officer is rightly in the presence of an individual and has reasonable suspicion that the person is armed and dangerous, he may frisk that person for weapons.  See 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 246 (3d ed. 1996).  The requirement that an officer be rightly in the presence of the person frisked means that the officer must have a duty to be in the person's presence, such as to execute a search warrant or conduct an arrest of some other person.  See id.

Here, Richmond Police Detective Brian Corrigan knew the Chesterfield officers had a warrant for the arrest of Brian Roland.  Although Detective Corrigan did not know the offense for which Roland was being arrested or what Roland looked like, Corrigan had been involved in a five-month investigation involving drug use in Roland's apartment and at least one other apartment adjoining it.  Roland's "name had come up" in relation

- 3 -

to a variety of drugs, including marijuana, cocaine and ecstacy. Two weeks earlier, Corrigan had been involved in the arrest of a person in an adjoining apartment in which gun holsters were found, and Corrigan had information about weapons "going in and out of the two main apartments."

Immediately prior to the attempt to arrest Roland, police surveilled his apartment building and made arrangements for an informant to lure him into the dimly lit alley behind the apartment building. They agreed to handcuff Roland, the informant and "everybody" in the immediate vicinity in order to assure the safety of the informant and the officers. The informant, after calling Roland's apartment, reported people were using drugs in the apartment at that time and that Roland was on his way down. Although the officers believed only Roland would be coming to the alley to meet the informant, a Chesterfield officer conducting surveillance immediately behind the apartment building reported over his radio that "there were two individuals that came out of the apartment together and were approaching the [informant]." (Emphasis added). When Detective Corrigan arrived on the scene, he saw one individual walking toward the informant and saw a second individual, also walking in the direction of the informant, "maybe ten steps" behind the first individual.

Under these circumstances, we hold Detective Corrigan had reasonable suspicion to detain appellant briefly to determine

- 4 -

whether he was Roland.  He also had reasonable suspicion, based on his involvement in an ongoing investigation of Roland and others in the apartment building involving drugs and guns, that appellant might be armed and dangerous, which justified his frisk of appellant for weapons.

Further, even after determining that appellant was not Roland,[1] Officer Corrigan acted reasonably in detaining appellant briefly in order to protect appellant, the informant and the officers while they completed their apprehension of Roland. Although the officers did not know with certainty whether appellant and Roland exited the same apartment, they simultaneously exited the same apartment building and walked toward the informant no more than ten steps apart.  The informant had reported the occupants of Roland's apartment were using drugs immediately prior to Roland's apprehension, and appellant himself appeared to be under the influence of something when Detective Corrigan seized him.

---

[1] The record does not establish precisely when this occurred.  When Detective Corrigan was asked on cross-examination whether he heard the Chesterfield officers refer immediately to the other individual they had stopped by Roland's nickname of "Rick Dog," Corrigan testified that he was "concentrating on [appellant]" at that time and that it was "[p]ossible or impossible" that he could have heard the Chesterfield detectives call Roland by his nickname.  We assume without deciding that Corrigan learned appellant was not Brian Roland when appellant identified himself as James Shelton. Detective Corrigan gave no indication that he disbelieved appellant's statement or that he took additional steps to confirm that appellant was not Brian Roland.

- 5 -

Finally, Roland's apprehension occurred in the alley behind the apartment building in full view of Roland's apartment. Although the officers in the alley outnumbered civilians by at least three to one, Detective Corrigan could reasonably have feared what any other occupants of Roland's apartment might do if they observed Roland's arrest through the window or were alerted to Roland's arrest by appellant, should he be allowed to leave the scene prematurely.

Thus, Detective Corrigan's brief detention and initial weapons frisk of appellant's waistband area and pockets were reasonable. However, because Detective Corrigan identified nothing in the course of the weapons frisk which he suspected was a weapon or knew was any type of contraband, we must examine the reasonableness of Corrigan's further search of appellant.

B.

INEVITABLE DISCOVERY

The trial court found appellant did not consent to the search of his pocket or pants leg[2] but nevertheless concluded the drugs found in his socks were admissible because they would inevitably have been discovered pursuant to appellant's arrest on the Chesterfield warrant. We hold the facts do not support an inevitable discovery theory.

---

[2] Whether appellant gave voluntary consent for any part of the search was a question of fact, see, e.g., Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996), the correctness of which is not before us in this appeal.

The exclusionary rule provides that evidence obtained in a search or seizure which violates the Fourth Amendment may not be admitted into evidence. See, e.g., Walls v. Commonwealth, 2 Va. App. 639, 651, 347 S.E.2d 175, 182 (1986). The inevitable discovery exception to the exclusionary rule permits admission of that evidence if the Commonwealth proves, by a preponderance of the evidence, that the contraband "would ultimately or inevitably have been discovered" in spite of the illegal conduct. Id. at 655, 347 S.E.2d at 184 (citing Nix v. Williams, 467 U.S. 431, 444 (1984)). In order to have evidence admitted under the inevitable discovery exception, the Commonwealth must show:

> "(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation."

Id. at 656, 347 S.E.2d at 185 (quoting United States v. Cherry, 759 F.2d 1196, 1204 (5th Cir. 1985)) (emphasis added).

Here, the evidence failed to support a finding that there was "'a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct.'" Id. (quoting Cherry, 759 F.2d at 1204). Although a warrant for appellant's arrest existed in Chesterfield, no evidence established that Detective Corrigan or any of the other

- 7 -

officers at the scene was aware of this fact before they ran the warrants check.  Although Corrigan had been involved in an ongoing drug investigation of Roland's apartment building, he did not recognize appellant's name when appellant identified himself.  Further, the record does not indicate precisely when the Chesterfield detective offered to run the warrants check for appellant or when Detective Corrigan accepted the offer.  Finally, no evidence established that a warrants check would have been performed as a matter of course solely as a result of the initial detention.

Thus, the record does not establish "'a reasonable probability that the [drugs in appellant's socks] would have been discovered [pursuant to a search incident to arrest on the outstanding warrant] but for the police misconduct.'"  Id. (quoting Cherry, 759 F.2d at 1204).  Because the sequence of events is unclear in the record, it does not exclude the possibility that the fruit of Detective Corrigan's unreasonable search of appellant's pocket or pants leg influenced his decision regarding whether to run a warrants check.

C.

SEARCH OF POCKET AND PANTS LEG

Finally, we agree with appellant that the alternate legal theory presented by the Commonwealth to the trial court did not render the discovery and seizure of the drugs reasonable.  The Commonwealth argued at trial that the searches of appellant's

pocket and pants leg were reasonable.  The trial court made no express finding on that issue before it concluded the drugs were admissible under the inevitable discovery doctrine.  It observed only that Detective Corrigan "pulled up the pant leg" and that "[he] may not have been able to [do that] under the circumstance [in] which it was done here."

An officer rightly in the presence of an individual may frisk that person for weapons based on reasonable suspicion that a person may be armed and dangerous.  See LaFave, supra, § 9.5(a), at 246.  However, where no evidence indicates the officer felt an object he could reasonably have believed was a weapon, the act of reaching into an individual's pocket or lifting his pants leg constitutes a search, for which the officer must have had either consent or probable cause.  See Harris v. Commonwealth, 241 Va. 146, 150-51, 400 S.E.2d 191, 194 (1991) (quoting Sibron v. New York, 392 U.S. 40, 65-66, 88 S. Ct. 1889, 1904, 20 L. Ed. 2d 917 (1968)) (pocket); see also United States v. Craft, 30 F.3d 1044, 1045 (8th Cir. 1994) (holding implicitly that lifting of pants leg was not justified by consent for pat down).  But see, e.g., Hodges v. State, 678 So. 2d 1049, 1051 (Ala. 1996) (approving lifting of pant leg during pat down to check "hard leather boots" for weapon).  Although a person in custody may give valid consent to a search, see, e.g., Gray v. Commonwealth, 233 Va. 313, 327, 356 S.E.2d 157, 164 (1987), the trial court found that appellant did not

- 9 -

consent to the searches at issue.  Consequently, the searches were valid only if they were based on probable cause.  We hold that they were not.

"Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed."  Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977).  Probable cause "must be based on more than speculation, suspicion, or surmise that a crime might be in progress."  Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995); see also Grimstead, 12 Va. App. at 1069, 407 S.E.2d at 49.  To determine whether probable cause exists for an arrest or search, we examine the totality of the circumstances.  See, e.g., Parker v. Commonwealth, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998).

Here, Corrigan testified that appellant was "complacent" and cooperative and that he thought appellant might be under the influence of something.  Appellant exhibited no furtive or nervous behavior.  While appellant was being lawfully detained, Detective Corrigan asked him if he had any guns or drugs.  Appellant responded, "No guns," which caused Detective Corrigan to "think[] that [appellant] was saying, I do have drugs."  Corrigan asked appellant a second time whether he had any guns

- 10 -

or drugs, and appellant, "[w]ith his head[,] . . . indicated his left side."  Corrigan then asked, "Is it in your pocket?", to which appellant replied, "sunglasses."

This exchange, coupled with the fact that appellant appeared to have exited an apartment in which drugs frequently were used in the company of another individual known to use drugs, may have given Detective Corrigan reasonable suspicion to believe that appellant had drugs in his possession.  However, it was insufficient to provide Corrigan with probable cause to search or arrest appellant for possession of illegal drugs.  See, e.g., Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990) (in case involving informant's tip, holding "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause").

Next, even assuming the circumstances provided probable cause to search appellant's pants pocket for drugs, the fruits of Detective Corrigan's search of the pocket did not give him probable cause to search beneath appellant's pants leg. Although Corrigan's discovery of appellant's "lucky bullet" may have aroused further concern that appellant might be carrying a

- 11 -

firearm, the circumstances provided no more than reasonable suspicion justifying a pat down of appellant's legs and ankles, an area which would also have been within the scope of the initial pat down of appellant. Those circumstances did not provide Detective Corrigan with probable cause to conduct a visual search beneath appellant's pants leg. Only if Corrigan had first conducted a pat down of that area and felt something he believed could have been a weapon would his actions have been reasonable. See Craft, 30 F.3d at 1045 (in case involving consent pat down, holding that, "[b]ecause the officer became aware of the object's incriminating character before he lifted Craft's pant leg, the officer was justified in lifting the pants and seizing the contraband without a warrant" (emphasis added)).

For these reasons, we hold the initial seizure and frisk of appellant were reasonable. Nevertheless, we conclude the facts failed to support (1) the trial court's ruling that the drugs would inevitably have been discovered in the course of appellant's arrest on an outstanding warrant or (2) the Commonwealth's alternate theory at trial that the officer developed probable cause to search appellant's pocket and pants leg for weapons or drugs. Thus, we reverse appellant's conviction and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.