COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia

TYREL MARQUIS DORROUGH

                                                     MEMORANDUM OPINION[*] BY

v.        Record No. 1759-09-1                  JUDGE D. ARTHUR KELSEY
                                                      JUNE 22, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Charles E. Haden for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

The trial court found Tyrel Marquis Dorrough guilty of possession of cocaine with intent

to distribute and possession of marijuana. On appeal, Dorrough argues the court erroneously

denied his motion to suppress. We disagree and affirm.

I.

When reviewing a denial of a suppression motion, we review the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). This standard requires us to "give due

weight to inferences drawn from those facts by resident judges and local law enforcement

officers." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation

omitted). In doing so, we "consider facts presented both at the suppression hearing and at trial."

Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009) (citation omitted).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.

One afternoon in February 2008, Newport News Police Officer H.A. Westrick made a traffic stop of a vehicle driven by Dorrough. During the stop, Officer Westrick discovered Dorrough was driving on a suspended license. Officer Westrick prepared a summons for the offense and began to explain it to Dorrough. During this conversation, another officer, Christopher Brown, announced that he saw on the floorboard of Dorrough's vehicle a small piece of marijuana. Officer Brown had been a police officer for eleven years and had prior experience as an adult probation officer. Brown received specialized training on "drug recognition" and previously attended "several drug interdiction schools also to identify drugs." The marijuana appeared to be a "piece of a stem" about a quarter-inch in length and "little bits of the leaf." Based upon his training and experience, Brown concluded, "It looked like marijuana. . . . It appeared to be marijuana from what I have seen in the past."[1]

Officer Westrick likewise observed the stem on the vehicle floorboard and confirmed it to be marijuana. At that point, Westrick testified she detained Dorrough, advised him of his <u>Miranda</u> rights, and asked him about the marijuana. Dorrough waived his rights, said the marijuana was "probably his," and admitted he had smoked marijuana earlier that day. Westrick then searched Dorrough's vehicle and discovered a set of scales with marijuana residue, a bag containing 13.87 grams of cocaine, additional marijuana residue in a cup holder, a glass measuring cup with cocaine residue, and a box of plastic bags. During a later interview at the police station, Dorrough confessed to being a drug runner who "moves" cocaine from Yorktown to Newport News.

---

[1] Later laboratory analysis confirmed the "piece of a stem and little bits of the leaf" initially observed by the officers were in fact marijuana. <u>See</u> App. 18, 29 (Dep't of Forensic Sci. Cert. of Analysis, Item 1 (March 24, 2008)).

Prior to trial, Dorrough filed a motion to suppress. He did not contest the traffic stop of the vehicle. Nor did he object to the scope of the search of the vehicle. Instead, Dorrough argued the police officers provided insufficient factual basis for their belief that the plant material on the floorboard was marijuana. The trial court denied the motion, presided over the trial, and found Dorrough guilty of possession of cocaine with intent to distribute and possession of marijuana.

### III.

Dorrough frames his argument in a circuitous manner. He challenges the search of the vehicle only by first challenging his "arrest" on drug charges:

> In the present case, Dorrough does not challenge the scope of the search conducted by Officer Brown and Officer Westrick. The *sole issue* raised is whether Officer Brown and Officer Westrick had *probable cause to arrest* Dorrough for possession of marijuana and thus to perform a search incident to arrest.

Appellant's Br. at 10 (emphasis added). That arrest, Dorrough argues, rested solely on the officers' observation of a small piece of plant material that could have been something other than marijuana.[2] Because the officers had no probable cause to believe the plant material was marijuana, Dorrough reasons, they likewise had no probable cause to arrest him or to search his vehicle incident to that arrest. Id. at 13 (arguing that no circumstances corroborated the officers' "belief that the twig was in fact marijuana").

Before addressing the ultimate issue — probable cause to believe the plant material was marijuana — we must first clarify the legal context in which the issue arises. At the time the

---

[2] The trial judge similarly understood the issue in these terms. His letter opinion states: "The gist of the argument of the defendant appears to be simple disagreement with the officer's conclusion the plant material on the floor of the car was capable of being identified as marijuana." Letter Op. at 3 (Feb. 23, 2009). Dorrough does not argue on appeal, and thus we do not address, whether probable cause existed for the officers to believe Dorrough possessed the plant material observed in the vehicle.

officers observed what they thought was marijuana in Dorrough's vehicle, he was *already in police custody* for driving on a suspended license. Officer Westrick was still explaining the summons process to Dorrough when Officer Brown saw the marijuana stem. Under Code § 19.2-74(A)(1), Westrick was authorized to release Dorrough from custody *only after* Dorrough verified in writing "his written promise to appear" in court at the specified time and place. See Hines v. Commonwealth, 39 Va. App. 752, 758, 576 S.E.2d 781, 784 (2003) (After an officer presents the summons, the detained person "then gives his written promise to appear at such time and place *before* the officer releases him from custody." (citation and internal brackets omitted) (emphasis added)). No evidence in the record suggests Dorrough executed the summons prior to the discovery of the marijuana.

While in custody for the traffic offense, Dorrough could be questioned about the suspended driving offense or any other matter that did not appreciably lengthen the detention. As we recently explained, "where a seizure of a person is based on probable cause to believe that a traffic violation was committed, an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention." Ellis v. Commonwealth, 52 Va. App. 220, 227, 662 S.E.2d 640, 643 (2008) (citations omitted). The same is true even with a temporary investigatory detention. During a lawful roadside stop, the

> temporary seizure of driver and passengers ordinarily continues,
> and remains reasonable, for the duration of the stop. Normally, the
> stop ends when the police have no further need to control the
> scene, and inform the driver and passengers they are free to leave.
> An officer's inquiries into matters unrelated to the justification for
> the traffic stop, this Court has made plain, do not convert the
> encounter into something other than a lawful seizure, so long as
> those inquiries do not measurably extend the duration of the stop.

Arizona v. Johnson, 129 S. Ct. 781, 788 (2009). Thus, the officers needed no additional legal authority to justify Dorrough's detention at the time they asked him if the marijuana stem

belonged to him.  This conclusion is all the more true where, as here, the discovery of suspected marijuana authorized at minimum a continued investigatory detention.[3]

Equally important, it matters not that the discovery of the suspected marijuana ultimately led to the arrest of Dorrough for marijuana possession, which, in turn, led to the search of the vehicle.  The middle step is legally superfluous.  The initial discovery of the marijuana, assuming probable cause existed, permitted the officers to search the entire vehicle under the automobile exception to the warrant requirement.  "If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."  Arizona v. Gant, 129 S. Ct. 1710, 1721 (2009); Wyoming v. Houghton, 526 U.S. 295, 301 (1999) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents that may conceal the object of the search*." (citation omitted and emphasis in original)).  Thus, when an officer observes what appears to be marijuana "on the floorboard of the vehicle," he has "every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband."  United States v. Burnett, 791 F.2d 64, 67 (6th Cir. 1986).[4]

---

[3] For an investigatory detention, the "likelihood of criminality 'need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard' applicable in other contexts."  Raab v. Commonwealth, 50 Va. App. 577, 581, 652 S.E.2d 144, 146 (2007) (*en banc*) (citation omitted).

[4] See also United States v. Booker, 269 F.3d 930, 932 (8th Cir. 2001) (finding the trooper's sighting of cannabis within the vehicle "before the traffic stop was completed . . . generated probable cause to justify the subsequent search" of the vehicle); United States v. Desir, 257 F.3d 1233, 1236 (11th Cir. 2001) (holding crack cocaine in plain view was a sufficient alternative basis for the court's denial of defendant's motion to suppress and validated any subsequent search of his vehicle); United States v. Orozco, 715 F.2d 158, 160 (5th Cir. 1983) (*per curiam*) (concluding officers' observance of drugs in one section of an automobile provided evidence that the car might contain other contraband, thus, probable cause to search other compartments of the vehicle was valid); United States v. LaFountain, 252 F. Supp. 2d 883,

Properly framed, then, the only issue is whether the officers had probable cause to search the vehicle after observing in plain view what they believed to be marijuana on the floorboard. We believe they did.

As the United States Supreme Court has recently emphasized, the "very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision." Herring v. United States, 129 S. Ct. 695, 699 (2009). "Perhaps the best that can be said generally about the required knowledge component of probable cause for a law enforcement officer's evidence search is that it raise a 'fair probability' or a 'substantial chance' of discovering evidence of criminal activity." Safford Unified Sch. Dist. # 1 v. Redding, 129 S. Ct. 2633, 2639 (2009) (quoting Illinois v. Gates, 462 U.S. 213, 238, 244 n.13 (1983)).[5] Demanding more imposes an "unduly high degree of certainty as to the incriminatory character of evidence," Texas v. Brown, 460 U.S. 730, 741 (1983) (plurality opinion), and implies — wrongly so — that the Fourth Amendment requires "that a police officer 'know' that certain items are contraband or evidence of a crime" before they can be seized. Id.

Consequently, the probable cause standard does not "demand any showing that such a belief be correct or more likely true than false." Slayton v. Commonwealth, 41 Va. App. 101,

_____

888-89 (D.N.D. 2003) (finding the observation by officers of a crack pipe in plain view during an initial traffic violation detention supplied probable cause to search the vehicle).

[5] An officer may confiscate contraband without any probable cause implicating the criminality of the possessor. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Wyoming v. Houghton, 526 U.S. 295, 302 (1999) (citation omitted). "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Chambers v. Maroney, 399 U.S. 42, 49 (1970) (quoting Carroll v. United States, 267 U.S. 132, 158-59 (1925)); accord Fox v. Commonwealth, 213 Va. 97, 100-01, 189 S.E.2d 367, 370 (1972).

106, 582 S.E.2d 448, 450 (2003) (quoting Brown, 460 U.S. at 742).[6] "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Police officers need not be "possessed of near certainty as to the seizable nature of the items." Brown, 460 U.S. at 741. To be sure, not even a "prima facie showing" of criminality is required. Gates, 462 U.S. at 235.[7]

Equally settled, "a police officer may draw inferences based on his own experience in deciding whether probable cause exists," Ornelas v. United States, 517 U.S. 690, 700 (1996), including inferences "that might well elude an untrained person," United States v. Cortez, 449 U.S. 411, 418 (1981); see also United States v. Arvizu, 534 U.S. 266, 273 (2002) (emphasizing that reviewing courts should take into account an officer's "experience and specialized training" (citation omitted)). The United States Supreme Court's "insistence on this point has been nothing less than overwhelming." United States v. Johnson, 599 F.3d 339, 343 (4th Cir. 2010) (collecting cases).[8]

Governed by these standards, the trial court did not err in concluding the police officers had probable cause to search Dorrough's vehicle after observing what they believed to be contraband on the floorboard. Officer Brown testified about his prior experience in narcotics both as a police officer and as a former probation officer. He received specialized training in

---

[6] See United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004); United States v. Jones, 31 F.3d 1304, 1313 (4th Cir. 1994).

[7] See also Saunders v. Commonwealth, 218 Va. 294, 300-01, 237 S.E.2d 150, 155 (1977); Westcott v. Commonwealth, 216 Va. 123, 126, 216 S.E.2d 60, 63 (1975); Manley v. Commonwealth, 211 Va. 146, 151, 176 S.E.2d 309, 313 (1970); Quigley v. Commonwealth, 14 Va. App. 28, 34, 414 S.E.2d 851, 855 (1992).

[8] "An officer is entitled to view the circumstances confronting him in light of his training and experience." James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citation omitted). In determining whether probable cause existed, the court also considers "an

"drug recognition" at law enforcement interdiction schools.[9]  The small "piece of a stem and little bits of the leaf," Brown concluded, "looked like marijuana" and "appeared to be marijuana from what [he had] seen in the past."  Officer Westrick came to the same conclusion.

Code § 54.1-3401 defines marijuana as "*any part* of a plant of the genus *Cannabis* whether growing or not, its seeds or resin; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or its resin."  (Emphasis added.)  Given their specialized training, Officers Brown and Westrick reasonably believed there was a "fair probability" or a "substantial chance," Gates, 462 U.S. at 238, 244 n.13, that what they observed in Dorrough's vehicle was marijuana.  See, e.g., Fox v. Commonwealth, 213 Va. 97, 98, 189 S.E.2d 367, 368 (1972) (holding officers had probable cause to search a vehicle after observing on "the floorboard 'some green material similar to tobacco, only it had a little greener color to it, and a seed'" that they believed to be marijuana).  Because Officers Brown and Westrick drew "on their own experience and specialized training to make inferences . . . that might well elude an untrained person," Arvizu, 534 U.S. at 273 (citation omitted), the trial court did not err in accepting their testimony and finding probable cause justified the seizure of the marijuana stem and the resulting search of the vehicle for further evidence of contraband.[10]

officer's specialized training and personal experience, unavailable to a person untrained in law enforcement."  Moore v. Commonwealth, 276 Va. 747, 757, 668 S.E.2d 150, 156 (2008).

[9] By noting these facts, however, we do not mean to imply an inexperienced officer could not have come to the same conclusion or even that it would matter if an inexperienced officer could never have done so.  The governing objective test does not draw distinctions between probable cause determinations by a "knowledgeable, veteran officer" and those "made by a rookie" officer faced with precisely the same circumstances.  Devenpeck v. Alford, 543 U.S. 146, 154 (2004).  It asks only what the objective facts would mean "to police officers trained in analyzing the observed conduct for purposes of crime control."  Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976); Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981) (judging probable cause from the perspective of a "trained police officer").

[10] Given our ruling, it is unnecessary to address whether the officers could have relied upon Dorrough's statements — which he made *prior* to the search of his vehicle — that the

Finally, we acknowledge Dorrough's complaint that a sentence of the trial judge's letter opinion can arguably be read to suggest he misunderstood the objective test governing probable cause determinations. See Letter Op. at 4 (Feb. 23, 2009). In Virginia, however, "we presume [trial] judges know the law and correctly apply it." de Haan v. de Haan, 54 Va. App. 428, 445, 680 S.E.2d 297, 306 (2009) (citation omitted). The presumption can be rebutted, of course, but we are particularly skeptical of appellate efforts to piece together such a conclusion from fragmented statements viewed outside the larger context of the court's ruling. See generally Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (holding it improper to "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied" (citation omitted)). The full context of the trial court's opinion in this case does not reflect any conceptual misunderstanding of the objective nature of the probable cause standard.

IV.

Because the trial court correctly denied Dorrough's motion to suppress, we affirm his convictions for possession of cocaine with intent to distribute and possession of marijuana.

Affirmed.

---

marijuana was "probably his" and that he had earlier that day smoked marijuana. Cf. Duncan v. Commonwealth, 55 Va. App. 175, 180-81, 684 S.E.2d 838, 840-41 (2009) (concluding defendant's voluntary statements provided, at minimum, probable cause for the officer to conduct the search of his vehicle).