COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Beales and Senior Judge Annunziata
Argued at Chesapeake, Virginia

HOPE KATHLEEN DAMON

                                                                      OPINION BY

v.         Record No. 1930-08-1                JUDGE D. ARTHUR KELSEY
                                                       AUGUST 11, 2009

CHRISTINE YORK,
  MITCHELL J. PARKER, JR. AND
  HEATHER CHAPMAN, F/K/A HEATHER YORK

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Douglas Fredericks for appellant.

No briefs or argument for appellees.

Margaret V. Weaver, Guardian *ad litem* for the child.

Against the wishes of the child and both her biological parents, the appellant — a former

live-in girlfriend of the child's mother — sought court-ordered visitation with the child. After

conducting an evidentiary hearing, the circuit court held the appellant was not a "person with a

legitimate interest" under Code § 20-124.1 for purposes of obtaining court-ordered visitation.

The appellant argues the circuit court erred because the evidence established, as a matter of law,

a statutory right for her to seek visitation. We disagree and affirm.

I.

When reviewing a circuit court's decision on appeal, "we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That principle

requires us to discard the evidence of the appellant which conflicts, either directly or

inferentially, with the evidence presented by the appellee at trial." Brandau v. Brandau, 52 Va. App. 632, 635, 666 S.E.2d 532, 534 (2008) (citation omitted).

During their marriage, Mitchell J. Parker, Jr. and Heather York had a baby girl in 1996. They divorced in 2000. The child lived with her mother and had visitation with her father. In October 2002, the mother allowed her girlfriend, Hope Kathleen Damon, to regularly stay overnight. Less than a year later, Damon and the mother briefly traveled to Canada and got married under a Canadian law authorizing same-sex marriage. The child stayed with her mother and the mother's girlfriend for about a year and nine months. During this period, the maternal grandparents claimed Damon alienated the mother from her family, alienated the child from her father and both sets of grandparents, and falsely reported that the child had a bipolar disorder. The child's behavior and performance in school began to suffer.

In 2003, the Department of Social Services learned that the child (then seven years old) was frequently home alone after school unsupervised. DSS initiated an investigation and discovered various conditions suggesting neglect, including a founded complaint that the child was self-medicating. The extended family became aware of DSS's investigative findings and decided to intervene.

In 2004, the child's maternal grandmother filed a petition for custody in the Virginia Beach Juvenile and Domestic Relations District Court. After hearing evidence, the juvenile court ordered that the child be placed in the shared custody of her father and maternal grandmother. In 2004, the juvenile court ordered the parties involved in the custody dispute (the mother, father, and maternal grandmother) not to permit the child to have any "contact whatsoever" with Damon.

The relationship between Damon and the child's mother ended in 2005. In July 2006, Damon filed a petition with the juvenile court seeking court-ordered visitation with the child.

The child's mother, father, and maternal grandmother objected to Damon's request. To represent the child's best interests, the juvenile court appointed the same guardian *ad litem* who had represented the child since 2004, spent over 78 hours investigating various allegations, and filed a 28-page report detailing her recommendations.

Upon hearing the evidence, the juvenile court held Damon was not a "person with a legitimate interest" under Code § 20-124.1 for purposes of obtaining court-ordered visitation over the objections of the child's parents and custodians. Given the sensitivity of the matters discussed in its earlier 2004 custody hearing, the juvenile court sealed the transcripts of the 2004 proceedings and ordered the parties to return all transcript copies to the court.

Damon appealed the juvenile court's order seeking a *de novo* review in the circuit court. She served discovery requests on the child's father, the child's mother, and the child's maternal grandmother. The circuit court entered a protective order finding many of the requests overly broad. The court ordered the mother, however, to answer several discovery requests that arguably related to the question whether Damon was a "person with a legitimate interest" to have standing under Code § 20-124.1. The court declined Damon's request for an order compelling discovery responses from the maternal grandmother.[1]

The circuit court observed that standing under Code § 20-124.1 presented a "threshold issue" that must be decided before reaching the ultimate issue of visitation. The court received

_____

[1] Damon argues the circuit court erred in failing to compel these discovery responses. Because Damon failed to proffer, either to us or the circuit court, how this alleged error prejudiced her, we will treat the circuit court's ruling as harmless error, if error at all. See Tazewell Oil Co. v. United Va. Bank, 243 Va. 94, 112, 413 S.E.2d 611, 621 (1992) (finding no "showing of prejudice" or "abuse of discretion" when appellant had not "indicated what additional evidence it expected to obtain in further discovery"); Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 887, 407 S.E.2d 25, 31 (1991) (assuming "the parents were entitled to discovery," but finding no "prejudice from the denial of their discovery motion").

into evidence the guardian *ad litem's* report to the juvenile court[2] and accepted the guardian *ad litem's* proffer that the child desired to have no contact with Damon. The court also heard testimony from the child's mother opposing Damon's bid for standing and from Damon in support of it.

The child's mother testified there had been no contact between the child and Damon since the 2004 juvenile court order.[3] Prior to that, she continued, Damon was merely "an adult presence" in the child's life during the brief relationship between herself and Damon. Damon was "my girlfriend at the time and lived with us during that time," the mother explained. The child "has as close a relationship with many of my friends at this moment," the mother pointed out, as she previously had with Damon. "I don't see it as being any different than that," she concluded.

When asked if "any unique bond" developed between the child and Damon, the mother said they "were friendly together. Nothing particularly unique." The mother stated that except during "several months" in which Damon helped get the child ready for school in the morning, Damon usually worked late and slept late. The mother picked the child up from child-care after school, prepared her dinner, assisted with her homework, and put her to bed.

Damon took the stand and presented a very different rendition of her brief relationship with the child. Aided by her supporting witnesses, Damon claimed she became a "stepparent" of the child after the marriage ceremony. Her relationship with the child, Damon argued, could not be described as a mere adult presence lacking any unique parental bond. She admitted she had

---

[2] Damon raises no objection on appeal to the admissibility of the guardian *ad litem's* report. At oral argument on appeal, Damon's counsel relied on certain aspects of the report and argued consideration of the report was "fair game . . . for any court." Hearing at 43:13 (Apr. 15, 2009).

[3] Damon initially raised an objection to this order being submitted in the later circuit court *de novo* appeal but withdrew the objection in a hearing on June 29, 2007.

- 4 -

had no contact with the child since 2004 but explained she made no earlier effort to seek visitation because of the juvenile court's no-contact order.

The circuit court rejected Damon's argument and found that she failed to prove she was a "person with a legitimate interest" under Code § 20-124.1. The court acknowledged the evidence showing Damon lived for a brief period with the child's mother in a "familial-type relationship" but noted that the "evidence is in conflict as to the nature and extent during that period of time of Miss Damon's role in that familial relationship and whether or not it rose to the level of functional equivalent of a stepparent or not."

The more relevant concern, the court clarified, was not the "relationship between the petitioner [Damon]" and the child's mother — but "rather the relationship between the petitioner and the child." Even though they "lived together" in a "familial-type relationship," the court stated, Damon could not prevail unless she maintained a "relationship with the child similar in nature to the relationships enumerated in Section 20-124.1."

The court noted the lapse of time between Damon's last contact with the child in 2004 and her request, about two years later, for court-ordered visitation. The court said it was not "ascribing fault or blame" but only treating it as a factor to be considered. After considering "the specific facts that have been adduced in these proceedings," the court concluded Damon failed to prove her standing under Code § 20-124.1. So as to reinforce the fact-specific nature of its ruling, the court added: "The decision is based solely upon the court's evaluation of all of the facts that have been presented as to the nature of the relationship between Miss Damon and [the child], and that is the sole focus of the court's inquiry and analysis as far as the court is concerned . . . ."

Damon filed two motions to reconsider. First, she argued the court failed to find "Damon was the functional equivalent of (if not an actual) former step parent." Second, Damon claimed

the court was essentially punishing her for respecting the juvenile court's 2004 no-contact order and waiting a period of time before seeking visitation.

Before entering a final order, the court clarified its ruling with several qualifications. The court stated Damon "may have been in a familial-type capacity of some sort that might be – or might have been the functional equivalent of one of the enumerated categories of the statute and, therefore, may have been at one time a person with a legitimate interest" but "she was not at the time of my ruling and for the relevant periods of time prior thereto."[4]

## II.

On appeal, Damon claims the circuit court erred as matter of law in not finding she was a "person with a legitimate interest" under Code § 20-124.1. We disagree.

"As the United States Supreme Court has observed, the 'liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court.'" Griffin v. Griffin, 41 Va. App. 77, 82, 581 S.E.2d 899, 901 (2003) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). "The Due Process Clause protects the 'fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" Id. We tread lightly on this subject recognizing the magnitude of the parental interests at stake and the limited authority of the courts to upend those ancient, constitutionally protected, parental interests.

As a general rule, the party seeking relief "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009). That is particularly true where, as here, the requested relief involves the invocation of coercive judicial remedies interfering with constitutionally protected parental rights. See

---

[4] In response to this clarification, Damon's counsel stated: "Judge, I would agree with what the court just said is what the court said in different words" at the conclusion of the earlier evidentiary hearing.

generally 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 20.7, at 537 (2d ed. 1987) (noting that a non-parent has the "burden of proof" to establish any statutory entitlement to court-ordered visitation).

Virginia law imposes a threshold standing requirement for those seeking court-ordered visitation. Under Code § 20-124.1, only those with "a legitimate interest" can file visitation petitions. Code § 20-124.1 provides that a person with "a legitimate interest shall be broadly construed and includes, but is not limited to grandparents, stepparents, former stepparents, blood relatives and family members provided any such party has intervened in the suit or is otherwise properly before the court."[5]

To have standing to litigate the question of visitation, the litigant must prove she either fits within the specific categories mentioned in Code § 20-124.1 or assert some persuasive ground for being treated as the "functional equivalent" of one of those categories. See Surles v. Mayer, 48 Va. App. 146, 165, 628 S.E.2d 563, 572 (2006); see also Stadter v. Siperko, 52 Va. App. 81, 91-92, 661 S.E.2d 494, 499 (2008). As the circuit court correctly observed, both the categorical relationships and their functional equivalents focus on the relationship between the petitioner and the child.

In this case, Damon argues her "familial relationship" with the child gave her the status of "quasi-stepparent" or the functional equivalent of "a stepparent or former stepparent." Appellant's Br. at 17, 20. Inverting the same point, Damon also contends she should have been considered a "functional equivalent of a family member" because she "stepparented" the child during her marriage to the child's mother. Id. at 20. For several reasons, we disagree.

---

[5] Being recognized as a person with "a legitimate interest," Code § 20-124.1, does not mean the petitioner has any presumptive right to visitation. It merely means the petitioner has standing to litigate the question in the first place, a far larger class of persons than the subset which might ultimately prevail on the merits.

To begin with, Damon failed to prove she fit within any specific statutory category recognized by Code § 20-124.1. "The generally accepted definition of a 'family' is 'a group of persons connected by blood, by affinity, or by law." Surles, 48 Va. App. at 179 n.6, 628 S.E.2d at 571 n.6 (citation and internal brackets omitted). It follows that a "family member" can only be a person related to the child by blood, affinity, or by law. Id. And a stepparent is related to the child by affinity, id., that is, "by virtue of a marriage subsequent to that of which the person spoken of is the offspring." Kogon v. Ulerick, 12 Va. App. 595, 598-99, 405 S.E.2d 441, 443 (1991) (citation omitted).[6]

Damon's marriage to the child's mother in Canada created neither a family nor a stepparent relationship between Damon and the child. The marriage was "void in all respects" under Virginia law. See Virginia's Marriage Affirmation Act, Code § 20-45.3. To be sure, the Virginia Constitution forbids our courts from recognizing any "legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effects of marriage." Va. Const. art. I, § 15-A. Damon, therefore, could not directly or indirectly qualify as having either a familial or stepparent relationship with the child by virtue of Damon's void marriage to the child's mother.

Damon similarly did not prove her status as a functional equivalent of any statutory category. Damon was a former girlfriend of the child's mother. Damon lived with the child's mother and the child for only 21 months — from October 2002 to July 2004. The mother testified Damon was, at best, a mere "adult presence" in the child's life. Damon and the child were "friendly together," the mother explained, but the relationship was not "particularly

---

[6] See also Doyle v. Commonwealth, 100 Va. 808, 810-11, 40 S.E. 925, 926 (1902) ("Affinity is the relation contracted by marriage between a husband and his wife's kindred, and between a wife and her husband's kindred, in contradistinction from consanguinity, or relation by blood." (citation omitted)); Surles, 48 Va. App. at 179 n.6, 628 S.E.2d at 571 n.6; Brooks v. Commonwealth, 41 Va. App. 454, 460, 585 S.E.2d 852, 855 (2003).

unique." To be sure, the mother added, the child "has as close a relationship with many of my friends at this moment" as she previously had with Damon. "I don't see it as being any different than that," the mother concluded.

Though Damon contested the mother's evidence, the circuit court had no obligation to accept Damon's contrary version of events. The circuit court, therefore, did not err in refusing to recognize Damon as the functional equivalent of a former stepparent. Cf. Surles, 48 Va. App. at 166, 628 S.E.2d at 572 (concluding petitioner was the "functional equivalent" of a stepparent because he proved he and the child "developed a relationship similar to — if not closer than — that ordinarily established between a stepfather and his stepson").

Damon contends this reasoning fails to discern the hidden error in the circuit court's analysis. The circuit court, Damon asserts, refused to recognize Damon's standing solely on the ground that Damon "waited too long" after the juvenile court's 2004 order to file a petition for visitation — thus implicitly finding that Damon once was a person with a "legitimate interest" under Code § 20-124.1 but lost that status over time. For several reasons, we disagree with Damon's characterization of the circuit court's reasoning.

When "faced with a record of historical facts that supports conflicting inferences," an appellate court must presume, even if the factfinder does not expressly say so, that all such evidentiary conflicts were resolved in favor of the prevailing party. Clanton v. Commonwealth, 53 Va. App. 561, 570, 673 S.E.2d 904, 909 (2009) (*en banc*) (citation omitted). We likewise do not "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Groves v. Commonwealth, 50 Va. App. 57, 62, 646 S.E.2d 28, 30 (2007) (citation omitted). Instead, "[a]bsent clear evidence to the contrary in the record, the judgment of a circuit court comes to an

appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995) (citation omitted).

Damon claims the appellate presumption of correctness can be rebutted because the circuit court's statements imply that Damon was at one time the functional equivalent of a former stepparent, but forfeited that interest by not pursuing the visitation petition earlier. This assertion, we believe, reads too much into the court's remarks from the bench. While the circuit court appeared to accept that some sort of "familial-type relationship" existed, the court expressly noted the evidentiary "conflict as to the nature and extent during that period of time of *Miss Damon's role in that familial relationship* and whether or not it rose to the level of *functional equivalent of a stepparent or not*." Nothing in the record suggests the court ruled in favor of the mother (while rejecting her testimony) and ruled against Damon (while accepting hers). We thus find no basis in this record to conclude, as Damon urges, that the circuit court found Damon was ever a functional equivalent of a stepparent.

We similarly find no merit in Damon's argument that the circuit court's remarks from the bench found she qualified as the functional equivalent of a "former" family member. Code § 20-124.1 includes no statutory category for former family members. The only statutory category described in the past tense is "former stepparent," Code § 20-124.1, a qualitatively distinct class with a uniquely close bond to the child. Consequently, Damon bore the burden of proving that her relationship with the child (not the child's mother) was the functional equivalent of a family member (not a "former" family member).

After hearing conflicting evidence on the subject and clarifying its holding upon reconsideration, the circuit court found Damon "*may* have been in a familial-type capacity of some sort that *might* be — or *might* have been the functional equivalent of one of the enumerated categories in the statute and, therefore, *may* have been at one time a person with a legitimate

interest, that she was *not at the time of my ruling* and for the relevant *periods* of time prior thereto." To overrule this factual determination, we would have to hold as a matter of law that a person who has previously held some arguable status as a *de facto* family member, even for a brief period of time, thereby attains perpetual standing to seek court-ordered visitation even when the relationship no longer exists. We decline to do so. Neither the text of the statute nor the facts of this case warrant such an unprecedented conclusion.[7]

Finally, we reject Damon's argument that the circuit court essentially punished her for obeying the juvenile court's no-contact order from 2004 to 2007. The circuit court emphasized it was not "ascribing fault or blame" but only treating it as a factor to be considered, an obviously prudent consideration when judging the legitimacy of a petitioner's effort to establish standing for court-ordered visitation. The ultimate decision was based, the circuit court explained, "solely upon the court's evaluation of *all of the facts* that have been presented as to the nature of the *relationship between Miss Damon and [the child]*, and that is the *sole focus* of the court's inquiry and analysis as far as the court is concerned . . . ."[8]

---

[7] Damon complains that the circuit court improperly disallowed her explanation for the delay (that she dutifully obeyed the no-contact order) under the *res gestae* exception to the hearsay rule. The record, however, confirms the circuit court's reply to this argument: "Now, as far as I can tell, the court never precluded by its ruling Ms. Damon from testifying that she . . . did do something or did not do something specifically because of her understanding or her belief or her impression or anything else. In fact, that testimony, except to the extent that a specific person said a specific thing, otherwise came in." Hearing Tr. at 31-32 (Nov. 27, 2007).

[8] Damon also argues that, at the evidentiary hearing, the guardian *ad litem* asked questions during cross-examination implying that Damon had made certain statements to the guardian during her investigation of the case. Damon's counsel objected "to the extent that it constitutes testifying" by the guardian. The circuit court overruled the objections stating, "It's a question, not testimony." A circuit court, sitting without a jury, "is presumed to separate 'the admissible from the inadmissible,' and to have considered only competent evidence." Spencer v. Commonwealth, 238 Va. 563, 569, 385 S.E.2d 850, 854 (1989) (citation omitted). The "training, experience and judicial discipline" of a trial judge permits him to separate the admissible from the inadmissible "even though he has heard both." Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). Because nothing suggests the circuit court improperly treated

- 11 -

III.

Because the circuit court did not err as a matter of law in finding Damon failed to

establish her status as a "person with a legitimate interest" under Code § 20-124.1, we affirm.


Affirmed.

---

the guardian's questions as implied testimony, see generally Rakes v. Fulcher, 210 Va. 542, 548, 172 S.E.2d 751, 756-57 (1970), we reject Damon's challenge on this point.