COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and Alston
Argued by teleconference

DEATRA A. BURCH

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0888-11-4                      JUDGE D. ARTHUR KELSEY
                                                    MARCH 13, 2012

ALEXANDRIA DEPARTMENT OF HUMAN SERVICES

          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                          Nolan B. Dawkins, Judge


          Paul D. Langley (Langley and Langley, P.C., on brief), for
          appellant.

          Richard F. Gibbons, Jr. (Stephen J. Saunders, Guardian *ad litem*
          for minor children; Richard F. Gibbons, Jr., PLC, on brief), for
          appellee.


        Pursuant to Code § 16.1-283(C)(2), the trial court terminated the parental rights of Deatra

A. Burch over five of her children.  On appeal, Burch argues (i) she did not receive adequate

notice of the termination proceedings, and (ii) the evidence was insufficient to justify the

termination.  We disagree and affirm.

                        I.   NOTICE OF TERMINATION PROCEEDINGS

        In June 2010, Alexandria Department of Human Services (ADHS) filed petitions

identifying four of Burch's children in ADHS foster care.  The petitions asserted that each child

"REQUIRES FURTHER DETERMINATION AS TO THE TERMINATION OF THE MOTHER'S

RESIDUAL PARENTAL RIGHTS AND RESPONSIBILITIES, IN THE CITY OF ALEXANDRIA,

SECTION 16.1-283."  App. at 13-16.  Accompanying each petition was a summons identifying a

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

hearing date in the Alexandria Juvenile and Domestic Relations District Court (JDR court). The

summons explained:

> TAKE NOTICE THAT A HEARING INVOLVING THIS CASE
> WILL BE HELD AT THE ADDRESS NOTED AT LEFT ON
>
> ………………07/26/2010……………AT………2:00 PM………….
>
> FOR THE PURPOSE OF:
>
> TERM MOTHER'S RIGHTS
> SEE ATTACHED

The attachments, entitled "NOTICE OF TERMINATION OF RESIDUAL PARENTAL RIGHTS,"

identified each of the four children and advised:

> The attached petition seeks to terminate the residual parental rights
> of the parents and step-parents of the above-named child.
> "Residual parental rights and responsibilities" means all rights and
> responsibilities remaining with the parent after the transfer of legal
> custody or guardianship of the person, including but not limited to
> the right of visitation, consent to adoption, the right to determine
> religious affiliation and responsibility for support.

Id. at 20-23. In July 2010, ADHS filed a similar petition for Burch's fifth child and, on August

2, 2010, a fifth summons and attachment issued, advising of a hearing date of "08/23/2010 at

3:00 PM." See id. at 28-30.

In response to these petitions and notices, Burch appeared with counsel in the JDR court.

After hearing the evidence, the JDR court entered orders terminating Burch's parental rights over

her children pursuant to Code § 16.1-283(C). Burch appealed to the Alexandria Circuit Court

seeking a *de novo* determination. Burch's notice of appeal identified the cases as "termination of

parental rights cases." Once in circuit court, however, Burch moved to dismiss the petitions,

claiming they provided inadequate notice of ADHS's request to seek termination of her parental

rights. The circuit court denied the motion, heard the evidence, and terminated Burch's parental

rights under Code § 16.1-283(C)(2).

On appeal, Burch contends the circuit court erred by denying her motion to dismiss because the petitions filed in JDR court and appealed to circuit court provided inadequate notice of ADHS's intent to seek termination of her parental rights. Both the statute and the United States Constitution, she argues, compel this conclusion. We disagree. Code § 16.1-283(A) addresses the required notice: "The residual parental rights of a parent or parents may be terminated by the court as hereinafter provided in a separate proceeding if the petition specifically requests such relief." Subsection A goes on to explain:

> The summons shall be served upon the parent or parents and the other parties specified in § 16.1-263. . . . The summons or notice of hearing shall clearly state the consequences of a termination of residual parental rights. Service shall be made pursuant to § 16.1-264.

Code § 16.1-283(A) thus contemplates a petition specifically requesting termination and a "summons or notice" clearly stating the "consequences of a termination of residual parental rights."

When read together, the petitions, summonses, and notices in this case provide sufficient notice under Code § 16.1-283(A). The petitions specifically seek a "DETERMINATION AS TO THE TERMINATION OF THE MOTHER'S RESIDUAL PARENTAL RIGHTS" and explicitly cite Code § 16.1-283. One of the accompanying notices, entitled "NOTICE OF TERMINATION OF RESIDUAL PARENTAL RIGHTS," makes clear the "attached petition seeks to terminate the residual parental rights" and explains this affects "all rights and responsibilities remaining with the parent . . . including but not limited to the right of visitation, consent to adoption, the right to determine religious affiliation and responsibility for support." App. at 20-23, 30.

Burch can hardly claim these petitions and notices failed to inform her of the true nature of this case. No doubt she knew the JDR court proceeding was initiated as a parental termination case. If not, she soon discovered that fact when the JDR court entered the orders terminating her

- 3 -

parental rights. Burch appealed the termination proceedings, naming them as such, to the circuit court when she sought *de novo* review. Nothing in the circuit court's record suggests Burch ever once expressed any doubt as to the nature of the proceedings. Nor do we think any reasonable person could. For these reasons, we find no error in the circuit court's decision to deny Burch's motion to dismiss alleging noncompliance with the notice requirements of Code § 16.1-283(A).[1]

## II. SUFFICIENCY OF THE EVIDENCE

Burch also challenges the sufficiency of the evidence supporting the circuit court's termination orders under Code § 16.1-283(C)(2).

In an appeal of a termination proceeding, we review the evidence "in the 'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 309 S.E.2d 460, 463 (1991)). In addition, "we presume the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). In its capacity as factfinder, therefore, the circuit court retains "broad discretion in making the decisions necessary

---

[1] For similar reasons, we find no merit in Burch's constitutional claim that the proceedings violated her procedural due process rights under the Fourteenth Amendment. "Nothing in the Constitution guarantees continuation of the parent-child relationship once fundamentally fair procedures have been followed to prove parental unfitness." Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 830, 433 S.E.2d 500, 505 (1993). The notices provided to Burch satisfy the threshold constitutional standard of fundamentally fair procedures.

to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

Because "the rights of parents may not be lightly severed," M.G. v. Albemarle Cnty. Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (citation omitted), clear and convincing evidence must establish the statutory grounds for termination, Fields, 46 Va. App. at 7, 614 S.E.2d at 659. In the end, the "child's best interests" remain the "paramount consideration" of the court. Akers v. Fauquier Cnty. Dep't of Soc. Servs., 44 Va. App. 247, 262, 604 S.E.2d 737, 744 (2004) (citation omitted). Even on this issue, however, we cannot "substitute our judgment" for the circuit court's, Ward v. Commonwealth, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991), but instead review the record only to determine if sufficient evidence supports it.

In this case, the circuit court found clear and convincing evidence under Code § 16.1-283(C)(2) to justify terminating Burch's parental rights. Code § 16.1-283(C)(2) authorizes termination if it is in the best interests of the child and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Termination decisions under subsection C "hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)). "Considerably more 'retrospective in nature,' subsection C requires the court to determine

whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." Id.

The evidence in this case amply supports the circuit court's determination. ADHS discovered in 2008 a pattern of neglect before Burch's children were removed from her residence.[2] During periods in which Burch was unwilling to care for her children, she placed them in the care of their great-grandmother. Burch would be absent for days, providing no information regarding her whereabouts. Nor would she make any provision (such as food, diapers, or other necessities) for the children while they were left in the great-grandmother's care. Finding evidence of neglect, the JDR court entered protective orders for four of the children.[3]

This pattern of neglect escalated into a near tragedy on Christmas Day 2008. Though previously cited for doing so, Burch disabled the smoke detector in an upstairs hallway. The Alexandria Fire Department investigator suspected Burch negligently disposed of a cigarette in an upstairs bedroom, causing a small fire.[4] Burch was downstairs when she smelled the smoke from the fire, but did not go upstairs to investigate. Instead, she sent her six-year-old daughter to assess the situation. The fire eventually destroyed the residence. In January 2009, the JDR court entered orders removing all four children from Burch's custody.

The children have varying needs. One of the children, then seven years old, had to be hospitalized "because of frequent temper outbursts, physical and verbal aggression, sexually

---

[2] At the time of the circuit court hearing, the children were ages eight, seven, five, four, and twenty-two months.

[3] Burch later gave birth to the fifth child subject to these termination proceedings.

[4] The investigator "strongly believe[d] that carelessly discarded smoking materials may have played a role given the time it took for this fire to progress and the potential heat release rate of [the] first materials ignited." ADHS's Ex. 7. At trial, Burch claimed smoking "had nothing to do with the fire." App. at 322.

inappropriate behaviors, threats to run away, and property destruction." ADHS's Ex. 10. She also had "special education needs" and attended a "personalized day school for emotionally and learning disabled students." Id. Another child, then six years old, was diagnosed with "Adjustment Disorder with Anxiety" and sometimes suffered from episodes of unexplained panic. Id. The youngest child repeatedly slammed his head against the floor or furniture at the slightest frustration. App. at 203. While in Burch's custody, some of the children were exposed to domestic violence and later, in foster care, mimicked the violent acts they had previously observed.

ADHS initially tried to rehabilitate Burch by returning one of the children to her care in June 2009 and by Labor Day 2009, had returned all of the children. During this time, Burch was offered parenting coaches, mental health treatment, drug court supervision, and intensive therapeutic in-home services. Despite these extensive services, Burch appeared unable to cope with basic parenting responsibilities, and ADHS concluded Burch still had not acquired minimal parenting competencies. She could not get the children to school on time, left the two youngest children unattended, displayed erratic and bizarre behavior, and reacted angrily to ADHS's daily efforts to help her. In November 2009, less than three months after all the children were returned to her, Burch smoked PCP, initially refused to submit to a drug test (which she eventually submitted to and tested positive for PCP and marijuana), and, later the same evening, left with the children and refused to disclose to ADHS their location, stating only that "she was gone."[5] App. at 128. ADHS finally convinced Burch to bring the children back the next day and all five children were then removed from Burch's custody.

_____

[5] Burch testified she had smoked PCP "because [she] had an abortion and [she] was depressed." App. at 299. At the time of her circuit court hearing, Burch was again pregnant. When asked if she would take her prescribed anti-depressant medication during her pregnancy, she answered, "I'm not going to go take medication with my baby in my stomach," id. at 302, even though she acknowledged her physician recommended that she do so, id. at 303.

We subscribe to the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770 (quoting Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003)). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" Id. (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Id. (citation omitted).

During the relevant period, clear and convincing evidence demonstrated that Burch, "without good cause," was either "unwilling or unable within a reasonable period of time . . . to remedy substantially the conditions" that led to the removal of her children and their continued placement in foster care. Code § 16.1-283(C)(2). The children's best interests, the circuit court correctly held, led to this conclusion. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Applying these principles, the circuit court did not err in terminating Burch's parental rights over the five children identified in the lower court's final orders.[6]

---

[6] On brief, Burch argues the trial judge's remarks from the bench implied he did not apply the termination standard *individually* to each child, but rather appeared to make his ultimate decision considering the children as a group. The court, however, entered five termination orders — each specifically finding the necessary factual predicates for termination under Code § 16.1-283(C)(2). We are "particularly skeptical" of efforts to challenge a circuit court ruling by focusing on "fragmented remarks from the bench." White v. White, 56 Va. App. 214, 218, 692 S.E.2d 289, 291 (2010); see also Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (holding it improper to "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied").

III.

In sum, the circuit court did not err by denying Burch's motion to dismiss the termination proceedings as violative of statutory and constitutional notice requirements. Nor did the court err in finding that clear and convincing evidence justified the termination of Burch's parental rights under Code § 16.1-283(C)(2).

Affirmed.