UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Chafin, O'Brien and Malveaux
Argued by teleconference


LISA J. YOKSHAS AND
 SCOTT L. GREASER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0065-17-3                      JUDGE TERESA M. CHAFIN
                                                    NOVEMBER 14, 2017
BRISTOL CITY DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                            Sage B. Johnson, Judge

          Shelly R. James (Colette M. Wilcox; John Elledge & Associates,
          P.C., on briefs), for appellants.

          Edward G. Stout; Joshua P. Sutherland, III, Guardian *ad litem* for
          the minor child (Peter Curcio; Holston Legal Group, on brief), for
          appellee.


        On December 16, 2016, the Circuit Court of the City of Bristol ("circuit court") entered

an order denying a series of petitions filed by Lisa J. Yokshas and Scott L. Greaser (referred to

collectively as the "appellants") pertaining to H., their former foster child.[1]  Specifically, the

circuit court denied:  1) petitions for the custody of H., 2) a petition for the adoption of H., and

3) a petition for an injunction prohibiting other individuals from adopting H.  The circuit court

concluded that the appellants lacked standing to file the petitions at issue, and denied their

petitions on that basis.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] We note that Yokshas and Greaser are a married couple.

On appeal, the appellants challenge the circuit court's standing decision and the denial of each of their petitions. The appellants contend that they had standing to file their custody petitions because they were "persons with a legitimate interest" under Code § 20-124.1. The appellants argue that the circuit court should have heard their custody petitions on their merits, and then proceeded on their adoption and injunction petitions. Alternatively, the appellants contend that the circuit court should have proceeded on their adoption and injunction petitions independently from their custody petitions. For the reasons that follow, we reverse the circuit court's decision.

I. BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)). So viewed, the evidence is as follows.

H. was born on July 14, 2014. Shortly after her birth, she was diagnosed with biliary atresia, a life-threatening medical condition. H.'s condition required significant medical care and an eventual liver transplant. On December 23, 2014, the Bristol City Department of Social Services ("DSS") removed H. from the care of her biological parents due to their failure to meet her medical needs.

On January 9, 2015, DSS placed H. in the care of the appellants pursuant to a standard, written foster care agreement. Although the appellants were interested in adopting H., DSS initially intended to return H. to the care of her biological parents. Accordingly, the foster care agreement required the appellants to support H.'s relationship with her birth family. The

agreement also allowed DSS to remove H. from the appellants' care whenever doing so was in her best interests.

The appellants were H.'s foster parents for approximately nine months. During this time period, the appellants cared for H. and bonded with her. They also met her significant medical needs.[2] Due to her medication and feeding requirements, H. required around-the-clock care. H. also had numerous medical appointments. Under the appellants' care, H.'s medical condition gradually improved.

While the appellants provided satisfactory care for H., they struggled with the ultimate goal of her foster care plan. The appellants began treating H. as their own child almost immediately after she was placed with them. Within one week of placement, the appellants began calling H. "Lily" instead of her given name. The appellants were also rude and dismissive toward H.'s biological parents, and they openly advocated for the termination of their residual parental rights. Although DSS employees and H.'s guardian *ad litem* explained to the appellants that their behavior was inappropriate and inconsistent with the goal of H.'s foster care plan, the appellants disregarded their advice.

On September 25, 2015, H. had a successful liver transplant at the Cincinnati Children's Hospital. While H. was recuperating, her treating physician contacted DSS and expressed concerns about the appellants' attempts to distance H. from her birth family. Based on the appellants' behavior, DSS decided to remove H. from their care before she left the hospital. On October 9, 2015, DSS employees informed the appellants of their decision, and H. was placed with her current foster parents, Mark and Cindy Bowman, approximately three weeks later.

---

[2] The appellants had prior experience in caring for "medically fragile" children, and they were "well versed in pediatric medical surgeries."

- 3 -

On November 10, 2015, the appellants filed petitions seeking the custody of H. in the Juvenile and Domestic Relations District Court of the City of Bristol ("JDR court"). After considering the written memoranda and evidence presented by the parties, the JDR court concluded that the appellants were not "persons with a legitimate interest" in obtaining custody of H., and therefore, they lacked standing to proceed on their custody petitions. The JDR court denied the appellants' custody petitions on that basis, and the appellants appealed the JDR court's decision to the circuit court.

After the appellants appealed the JDR court's decision pertaining to their custody petitions, they filed a petition for the adoption of H. in the circuit court. They also filed a petition for an injunction prohibiting H.'s new foster family from adopting her. DSS and H.'s guardian *ad litem* opposed all of the appellants' petitions, arguing that they lacked standing to obtain custody of H. or adopt her.

The circuit court denied each of the appellants' petitions following a series of hearings. Like the JDR court, the circuit court concluded that the appellants lacked standing to file their custody petitions. The circuit court determined that the appellants were not "persons with a legitimate interest" under Code § 20-124.1 because their relationship with H. was based solely on their foster care agreement with DSS. As that contract had been terminated, the circuit court concluded that the appellants were no longer persons with a legitimate interest in obtaining the custody of H.

The circuit court also determined that the appellants lacked standing to file their adoption petition because H. had been removed from their care. Citing relevant adoption statutes, the circuit court concluded that an adoptive child had to be presently living with a petitioner before he or she had standing to file a petition for adoption. As H. did not live with the appellants, the circuit court concluded that they did not have standing to proceed on their adoption petition.

Without standing to proceed on either their custody or adoption petitions, the circuit court determined that the appellants also lacked standing to proceed on their petition for an injunction prohibiting other parties from adopting H.

The circuit court entered a final order denying the appellants' petitions based on their lack of standing on December 16, 2016, and the appellants appealed the circuit court's decision to this Court.

## II. ANALYSIS

The appellants challenge the circuit court's standing decision in two alternative arguments. First, the appellants contend that the circuit court erred by determining that they lacked standing to proceed on their custody petitions. As H.'s former foster parents, the appellants argue that they were "persons with a legitimate interest" in obtaining custody of H., and therefore, had standing to file their custody petitions pursuant to Code § 20-124.1. The appellants then argue that the circuit court should have proceeded on the merits of their custody petitions before denying their adoption and injunction petitions.

Alternatively, the appellants contend that they had standing to proceed on their adoption and injunction petitions independently from their custody petitions. The appellants maintain that they had standing to adopt H. under the relevant adoption statutes because they currently live in Virginia. As the appellants had standing to adopt H. under their interpretation of the relevant statutes, they contend that the circuit court should have proceeded on their petition to adopt H. and their petition for an injunction prohibiting other individuals from doing so.

For the reasons that follow, we agree with both of the appellants' arguments.

### A. THE APPELLANTS' CUSTODY PETITIONS

The appellants argue that they had standing to file their custody petitions pertaining to H. because they were "persons with a legitimate interest" under Code § 20-124.1. As the

appellants' argument requires us to construe the statutory definition of a "person with a legitimate interest," it presents an issue of pure statutory construction subject to *de novo* review. Surles v. Mayer, 48 Va. App. 146, 162, 628 S.E.2d 563, 571 (2006).

Generally, courts may consider petitions for the custody of a child filed by any party with a "legitimate interest" in the proceedings. See Code §§ 16.1-241(A); 20-124.2(B). Code § 20-124.1 defines the term "person with a legitimate interest." While that statute does not provide a precise definition of the term, it lists several categories of individuals who qualify as persons with a legitimate interest in custody proceedings, including "grandparents, step-grandparents, stepparents, former stepparents, blood relatives and family members." See Code § 20-124.1. Code § 20-124.1, however, does not limit the definition of a "person with a legitimate interest" to these specific categories of individuals. Rather, Code § 20-124.1 states that "[t]he term shall be *broadly construed* to accommodate the best interest of the child" and that the definition "includes, *but is not limited to*" the listed categories. See Code § 20-124.1 (emphasis added).

Notably, nonfamily members may qualify as "persons with a legitimate interest" in obtaining the custody of a child under certain circumstances. See, e.g., Surles, 48 Va. App. at 166, 628 S.E.2d at 572-73. In order to have standing to petition a court for the custody of a child, an individual that is not included in one of the categories listed in Code § 20-124.1 must establish that he or she "maintains a relationship with the child similar in nature to those expressly listed in Code § 20-124.1." Id. at 165, 628 S.E.2d at 572. Stated differently, "the litigant must prove [that he or] she either fits within the specific categories mentioned in Code § 20-124.1 or assert some persuasive ground for being treated as the 'functional equivalent' of one of those categories." Damon v. York, 54 Va. App. 544, 553, 680 S.E.2d 354, 358-59 (2009). As determining whether an individual is a "person with a legitimate interest" in the custody of a

child requires an examination of his or her relationship with the child, this inquiry is often fact-intensive and "must be resolved on a case-by-case basis." Surles, 48 Va. App. at 166, 628 S.E.2d at 572.

In the present case, the appellants concede that they are not expressly included in any of the categories of "persons with a legitimate interest" listed in Code § 20-124.1. They contend, however, that they were the "functional equivalents" of H.'s parents. As the appellants cared for H. for nine months as her foster parents and helped her through a medical crisis, they maintain that they had a legitimate interest in obtaining custody of her. We agree with this argument.

As H.'s foster parents, the appellants cared for H. on a daily basis for approximately nine months. They served as temporary parents for H. during this time period, and they performed all of the tasks that would have typically been carried out by H.'s birth parents. Moreover, the appellants met H.'s substantial medical needs and nursed her through a liver transplant. The appellants also developed a strong emotional bond with H.

While we acknowledge that H.'s foster care placement had been terminated pursuant to the terms of the appellants' foster care agreement with DSS, we conclude that the termination of the foster care placement did not diminish the relationship between H. and the appellants. Although the appellants' legal relationship with H. ended when the foster care placement was terminated, they were still emotionally bonded with the child and significantly invested in her well-being.[3]

The present case is factually similar to Surles. In Surles, this Court determined that the former boyfriend of a child's biological mother qualified as a "person with a legitimate interest"

---

[3] We also note that the fundamental relationship that we must analyze in determining whether the appellants are "persons with a legitimate interest" under Code § 20-124.1 is their relationship with H., not their relationship with DSS. See Surles, 48 Va. App. at 166 n.7, 628 S.E.2d at 572 n.7.

in obtaining custody of the child at issue pursuant to Code § 20-124.1. Id. at 166, 628 S.E.2d at 572-73. Due to the strong relationship formed between the child and the petitioner, this Court concluded that the petitioner had a legitimate interest in obtaining custody of the child despite the fact that his relationship with the child's mother no longer existed. See id. at 166, 628 S.E.2d at 572.

When we broadly construe the term "person with a legitimate interest" in Code § 20-124.1, we conclude that the appellants are included within this category of individuals. Although their foster care relationship with H. had been terminated, the appellants acted as the "functional equivalents" of H.'s parents during the time period when she was placed in their care. Thus, the appellants had a legitimate interest in obtaining custody of her.

For these reasons, we hold that the circuit court erred by determining that the appellants lacked standing to file petitions for the custody of H. Accordingly, we reverse the circuit court's decision pertaining to this issue and remand this case for the consideration of the merits of the appellants' custody petitions.

## B. THE APPELLANTS' ADOPTION AND INJUNCTION PETITIONS

As the appellants' adoption and injunction petitions are inextricably linked with their custody petitions, the circuit court must reconsider these petitions following its consideration of the merits of the appellants' custody petitions. Nonetheless, we find it necessary to address the appellants' alternative argument regarding their standing to proceed on their adoption and injunction petitions independently from their custody petitions.[4]

The appellants contend that the circuit court erroneously determined that they lacked standing to file their adoption petition because H. no longer lived with them. Citing Code

---

[4] In the event that the circuit court denies the appellants' custody petitions, this issue will once again be before the circuit court.

§ 63.2-1201, the appellants argue that they had standing to file an adoption petition pertaining to H. because they were residents of the Commonwealth.

As the appellants' argument requires us to interpret several adoption statutes, it presents an issue of law that we review *de novo*. See id. at 162, 628 S.E.2d at 571. We begin our analysis with the plain language of the statutes at issue.

> "[W]here the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). "We must . . . assume that the legislature chose, with care, the words it used when it enacted the . . . statute, and we are bound by those words as we interpret the statute." Id.

Surles, 48 Va. App. at 163, 628 S.E.2d at 571.

Code § 63.2-1201 governs the filing of adoption petitions under the present circumstances. Notably, that statute states that an adoption petition

> may be filed *by any natural person who resides in the Commonwealth*, or who has custody of a child placed by a child-placing agency of the Commonwealth, or by an adopting parent of a child who was subject to a consent proceeding held pursuant to [Code] § 63.2-1233, or by intended parents who are parties to a surrogacy contract.

Code § 63.2-1201 (emphasis added). As the appellants are "natural persons" residing in the Commonwealth, we conclude that they had standing to file their adoption petition under the plain language of Code § 63.2-1201.

We acknowledge that additional language contained in Code § 63.2-1201 and other relevant statutes imposes pleading requirements for adoption petitions that the appellants may be unable to satisfy under the circumstances of the present case. See Code § 63.2-1201 ("The petition shall contain a full disclosure of the circumstances under which the child came to live, and is living, in the home of the petitioner."); see also Code § 63.2-1208(D)(v) (requiring a child

placing agency to investigate "the circumstances under which the child came to live, and is living, in the physical custody of the petitioner").  While the appellants may or may not be successful on the merits of their adoption petition, they had standing to file their petition pursuant to the broad language of Code § 63.2-1201.

Accordingly, we conclude that the circuit court erred by determining that the appellants lacked standing to file their adoption petition and dismissing their adoption and injunction petitions on that basis.

### III.  CONCLUSION

In summary, we hold that the appellants had standing to proceed on their custody petitions because they were "persons with a legitimate interest" in obtaining custody of H. pursuant to Code § 20-124.1.  We also hold that the appellants had standing to proceed on their adoption petition independently from their custody petitions because they were natural persons residing in the Commonwealth.  See Code § 63.2-1201.  As the appellants had standing to proceed on both their custody and adoption petitions, the circuit court erred by dismissing the appellants' injunction petition based on their lack of standing to proceed under either their custody or adoption petitions.  For these reasons, we reverse the circuit court's decision dismissing the appellants' custody, adoption, and injunction petitions based on their lack of standing, and we remand this case for the further consideration of those petitions.[5]

Reversed and remanded.

---

[5] We emphasize that this opinion only addresses the appellants' standing to file the petitions at issue, and we express no opinion regarding the merits of those petitions.  While the appellants have standing to litigate the issues presented in this case, they may or may not prevail on the merits of their various petitions.  See Damon, 54 Va. App. at 552 n.5, 680 S.E.2d at 358 n.5.

- 10 -